No. 72.—LEROY M. WILEY, PARISH & Co., and others, plaintiffs in error, *vs.* JAMES R. SMITH and URIAH JENKINS, trustees, &c., defendants in error.

[1.] A testator devises property to his son William *and his children*, (William at the time having no children,) with devise over to the heirs named in his will upon William dying *without having a child or children: held*, that William took an estate tail, with remainder to the heirs named in the will.

[2.] A testator devises property to his two sons, W. and B., and *their heirs*, with devise over to the heirs named in his will upon W. and B. *dying without child or children: held* that the word *heir*, in the antecedant limitation, is synonymous with *issue*, or *heirs of the body;* and that W. and B. took an estate tail, with remainder to the heirs named in the will.

[3.] An estate tail, by the laws of England, is converted into a fee simple estate by the statute of Georgia.

In Equity. Bill and demurrer. From Washington Superior Court. Tried before Judge HOLT. September Term, 1847.

The plaintiffs in error are judgment creditors of William and

Benjamin Brantley. Their executions were levied upon property in possession of the Brantleys which had been devised to them by their father, Edward Brantley, in and by his last will. The defendants in error, as trustees of said William and Benjamin and their children under the will, interposed a claim to the property, and which claim is pending on the appeal, in the Court below. The trustees filed their bill, enjoining the plaintiffs in error from further proceeding with their executions.

The bill charges, that the property levied on was left to the complainants in trust for said William and Benjamin and their children; that the testator was aged and infirm, and unskilled in the forms and words necessary to convey his property according to his intention, and made his will without professional aid ; that, well knowing that both of his said sons were hopelessly insolvent, and being desirous of making some provision for the support and maintenance of his said two sons, and any family which they might *thereafter have,* *one of whom had a wife at that time, to wit, William, and each of whom* *now have a wife and a child or children,* he made his will, intending to give to the complainants the property, in trust, for the use of his said two sons and their families, and for their support.

The clause of the will upon which the complainants relied in support of their title and claim as trustees, is as follows :

" I leave in the hands of my executors, (the defendants in error) in trust, all the remainder of my land where I now live, which has not been willed away, together with the grist and saw mill, log cart and apparatus thereunto belonging ; also, in the same manner, I leave in the hands of my executors, (the defendants in error) in trust, one negro man named Sam. The aforesaid lands, and negro above named in this item, *left in trust for my sons Benjamin* *H. Brantley and William Brantley, and their heirs.* The house and lot in Sandersville, where Zachariah Brantley now lives, I leave in trust with my executors, (the defendants in error) for my son *Benjamin H. Brantley and his children.* I leave two lots of land in Cherokee county, one 40 acres, the other 160, which lands I leave with my executors, (the defendants in error) in trust for my son *William Brantley, and his children;* and if my sons Benjamin H. Brantley and William Brantley *should die without having children,* in that case, the portion of property I leave for them in trust with my executors, (the defendants in error) returns back to my

estate, to be equally divided among all the heirs named in this will."

The testator then proceeds to appoint the defendants in .error as his executors, who qualified as such.

The complainants insisted that the alleged intention of the testator ought to be carried into effect; that the court of equity had the proper jurisdiction to that end, and prayed direction of the Court as to the execution of their trust, so that the rights of all parties in interest might be protected, and for injunction and other relief.

To which bill, the plaintiffs in error filed a general demurrer.

The Court below, after argument, overruled the demurrer, and ordered the plaintiffs in error to answer, &c.

To which decision the counsel for the plaintiffs in error excepted, upon the following grounds :

1. *Because* said decision was contrary to the rule established, regulating equity jurisprudence :

2. *Because* there was no equity in said bill, entitling the complainants to relief in equity ;

3. *Because*, by complainants' own showing, the title of the property vested in William and Benjamin H. Brantley ;

4. *Because*, by complainants' own showing, the executors had assented to the legacies, inasmuch as they claimed to hold as trustees, and not as executors ;

5. *Because* a court of equity has no power to correct a mistake in law, in such case as shown by the complainants ;

6. *Because* a court of law could enforce all the rights in this 'cause which a court of equity could enforce ;

7. *Because* a portion of the property was subject to execution, if not all.

Upon these exceptions error was assigned.

JOHNSTON & THOMAS, for the plaintiffs in error, referred to and commented upon the following authorities :

4 *Black. Com* ; *Story Eq . Pl. secs.* 111, 114, 115; 4 *Starkie Ev.* 995, 996; *Story Eq. Jur. sec.* 114 ; *Hunt* vs. *Rousmanier*, 8 *Wheat. R.* 174 ; 1 *Peters R.* 1, 13, 14 ; *Rogers* vs. *Atkinson*, 1 *Kelly R.* 12 ; *Collier* vs. *Lanier, ib.* 239 ; 8 *Wheat. R.* 179, 195 ; 1 *Johns. Ch. R.* 512, 575 ; 2 *id.* 37, 60; 6 *id.* 169, 170 ; *Georgia Decis.* 138,

139; 1 *P. Wills.* 290; 1 *Vesey R.* 133, 154; 3 *Brown Par. Cases* 257; 6 *id.* 450; 18 *Vesey R.* 429 *to* 433; *Brandon* vs. *Robinson,* 7 *Eng. Ch. R. cond.* 317, 321, *reviewed ; Lewin on Trusts,* 160; 1 *Bro. Ch. R.* 274; *Otis* vs. *Wood,* 3 *Wend. R.* 499, 500; 2 *Cowen R.* 543; *Jackson* vs. *Bateman,* 2 *Wend. R,* 570 ; *Jackson* vs. *Walker,* 4 *id.* 462; *Statute Frauds, Prince* 916; 2 *Powell on Devises, part* 2, *p.* 494; 1 *Barn. & C. R.* 336.

JENKINS, for the defendants in error.

*By the Court.*—NISBET, J., delivering the opinion.

Upon looking into this record, I find that certain judgment cred-itors had levied upon property in the possession of William and Benjamin H. Brantley, which was claimed by the complainants as trustees for them and their children. A trial of the claim was had and an appeal entered, pending which this bill was filed. The complainants allege, that the property levied on was left to them by the last will and testament of Edward Brantley, the father of William and Benjamin H. Brantley, in trust for said William and Benjamin, and their children; that Edward Brantley was unskilled in the forms and words necessary to convey his property according to his intention, and made his will without professional aid ; that his intention ought to be carried into effect ; that a court of equity has the proper jurisdiction to this end. They set forth the will of Edward Brantley, and pray the direction of the Court as to the execution of their trust, so that the rights of all parties in interest may be protected. They deny that this can be done at law, and pray also for general relief.

One statement in the bill, as it will have a controlling influence on the judgment of this Court, I transcribe in the words of the pleader, and is as follows :

" Edward Brantley, the father of the said William and Benja-min, being aged and infirm, and being possessed in his own right of a large estate, both real and personal, and well knowing that both of his said sons were hopelessly insolvent, and being desirous of making some provision for the support and maintenance of his said sons, and any family which they might *thereafter* have—*one of whom had a wife at that time, to wit, William, and both of whom now have a wife and a child or children*—the said Edward made and executed his last will and testament, &c."

The clause of the will under which the property was devised to the complainants, and which contains the directions and limitations relative to it, is in the following words, to wit :

" I leave in the hands of my executors, in trust, all the remainder of my land where I now live, which has not been willed away, together with the grist and saw mill, log cart and apparatus thereunto belonging ; also, in the same manner, I leave in the hands of my executors, in trust, one negro man named Sam. The aforesaid lands and negro above named in this item, *left in trust for my sons, Benjamin H. Brantley and William Brantley, and their heirs.* The house and lot in Sandersville, where Zachariah Brantley now lives, I leave in trust with my executors for my son *Benjamin H. Brantley and his children.* I leave two lots of land in Cherokee county, one 40 acres, the other 160, which lands I leave with my executors in trust for my son *William Brantley and his children ;* and if my sons Benjamin H. Brantley and William Brantley *should die without having children,* in that case, the portion of property I leave for them in trust with my executors, returns back to my estate, to be equally divided among all the heirs named in this will."

To this bill there was a demurrer by the defendants, the creditors of the Brantleys, which the Court overruled, stating that " it could not be necessary, and indeed might not be proper, to determine now the questions which may arise in construing the clause of said will which is specially referred to, or to attempt to settle or adjudicate the rights and interests thereby created. It is clear that this cannot be done under the proceedings of the claim at law, and the interests of all the parties concerned require that it should be done by a court having competent power. Such power this Court possesses, and will exert." The presiding judge appears to have believed that, upon the hearing of the demurrer, he could not put a construction upon the will. He was of opinion that the rights of the parties in interest required him to hold up the bill for a hearing upon the coming in of the answers ; and for the reason that these rights could not be adjusted upon the trial of the claim at law. He thought that this was a case for the interference of a court of chancery.

We think that the demurrer ought to have been sustained, but not upon the ground that the Court had no jurisdiction, or that

the rights and interests of all parties, on the trial of the claim at law, could be adjudicated.

But, admitting as we do the jurisdiction, the demurrer presented to the court of chancery below requires of us a construction of the will.

[1.] All the statements in the bill being taken as true, this is not such a case as will entitle the complainants to a decree. Admitting the case to be precisely as stated, we are of opinion that the property devised in trust for the use of the Brantleys, vested absolutely in them, and was therefore subject to the judgments of the creditors. If so, there is no equity in the bill, and it ought to have been dismissed. Were we of the opinion that the property did not so vest, we would hold with the Court below, for upon no other ground is there a want of equity. If there was any thing in this bill which made it necessary to the rights of the complainants, or those whom they represent, that the defendants should answer, or if the holding up of the bill for a hearing could enable a court, according to the rules of law, to put a different construction upon this will, we would be constrained to confirm the decision. The concession made by the demurrer, that all that is claimed by the bill is true, is equivalent to an affirmative answer to all its charges. The prayer of the bill is, that the trustees be instructed as to the execution of the trust, and that all the parties in interest be protected by a decree. If, however, this property vested absolutely in the first takers, the trust is concluded, and there is nothing about which to instruct them, nor is there any interest of other persons to be protected. If it be liable to the judgments, there is an end of the matter; and a court of chancery would be compelled to turn the parties back to abide the awards of the law upon that fact. We as chancellors could give them no relief.

If it be said that this bill alleges that the testator was "unskilled in drawing instruments conveying property," that in making his will " he had neither the advice nor the assistance of any learned in the law," that his intention was to secure the property willed, to his sons for their support and maintenance and that of their rising families, that it further invokes the aid of chancery to declare this intention by the aid of parol testimony, and *therefore* the defendants should be required to answer, the reply is easy and conclusive. The questions of law which arise upon the bill, (including the will,) are by the demurrer presented for determination. One of these is, whether there is in this will such ambiguity

as would authorize the admission of parol evidence.   It is not to be questioned but that the great law of construction is, that the intention of a testator in a will is to be ascertained, and when ascertained, if not in conflict with law, shall govern.   The will is in writing, and the intention of the testator is to be ascertained generally by reference to the written words.   *The writing* is the exponent of the thoughts and intentions of the deceased.   Courts cannot make a will by the aid of extrinsic testimony, they cannot supply entire omissions; what is written, if not against the law of the land, must continue as the incontrovertible will of the departed citizen; it may not be varied, contradicted or added to, by invoking the aid of parol testimony.   The same rules obtain as to the admissibility of parol evidence in regard to wills, substantially, which govern in relation to other instruments.

The first of these rules is, that if from the will the intention is manifest, there is neither a necessity for, nor a power to admit parol testimony.   *Ambiguity* is the basis upon which it is at all admitted; if there is no ambiguity, if the intention is manifest, the precedent condition of admissibility is wanting; and it is not an ambiguity which is undefined, a loose supposition that there may be doubt, a conjectural hypothesis of a variant intent; the rules which govern *that* are specific and stringent.   There is no undefined discretion in a court of equity in the admission of testimony, to arrive at the intention of a testator.   To the first rule as above laid down there is an exception, and that is, where the meaning of the testator's words is neither obscure nor ambiguous, and where the devise is on the face of it perfect and intelligible, but from some circumstance admitted in proof, an ambiguity arises as to which of two or more things, or which of two or more persons, the testator intended to express.   Thus, if a testator devise his manor of S. to A. B., and has two manors of S., North S. and South S., in that case, parol evidence may be received to solve the ambiguity, and show which manor of S. was intended; and this is an illustration of what is meant in the books by a latent ambiguity; it is not visible on the face of the will; it lies *hid* from observation until proof of some circumstance reveals it.   With this exception, the rule is unvarying that if the intention be clear from the will itself, *that* is the only evidence.   If, however, the intention is not perfectly manifest, then all the facts and circumstances respecting persons and property to which the will relates, are legitimate evidence to show the intention and application of

the words used. Also, in certain cases, the declarations of the testator made at the time of executing his will, his instructions for his will, his habit of calling certain persons and things by peculiar names, may be proven to show his real meaning where that is doubtful. Equity will also rectify mistakes where they are apparent on the face of a will, or may be made out by a due construction of its terms. I do not consider it necessary to this opinion that I should go further into this general doctrine, but shall content myself with a reference to the following authorities. *Hiscocks* vs. *Hiscocks,* 5 *Mee. & Wels. p.* 363 *to* 367; *Miller* vs. *Travers,* 8 *Bing. R.* 244; *Gord* vs. *Needs,* 2 *Mee. & Wels.* 129; *Wigram on Wills,* 184 *to* 188; *Greenl. Ev. secs.* 289, 290; 10 *Mass. R.* 435; 13 *Pick. R.* 261; 1 *Russ. & Myl. R.* 116; 5 *Pick. R.* 34; 8 *Conn. R.* 289; 5 *Wheat. R.* 359; 2 *Starkie Ev.* 558, 561; 1 *Mason R.* 10, 12; *Ambl. R.* 610; 1 *Johns. Ch. R.* 329; 1 *Vesey Sen.* 97; 3 *Sim. R.* 24; 3 *Greenl. R.* 276; 15 *Pick. R.* 400; 4 *B. & Ad.* 787; *Cow. & Hill notes* 939, 958 *to* 1 *Phil. Ev.* 532, 547; 11 *Johns. R.* 202; 1 *Bro. Ch. R.* 32; 15 *Vesey R.* 92; 6 *T. R.* 345; 2 *B. & P.* 608; 1 *Story Eq. sects.* 179, 180, 181; *Rogers.* vs. *Atkinson et al.,* 1 *Kelly R.* 12; *Edmondson and Wife* vs. *Dyson,* 2 *id.* 307.

Pronouncing then upon this will according to the allegations in the bill, in our judgment there is no ambiguity in it; the intention of the testator is perfectly clear, and therefore it is not a case where, if the bill were held up for a hearing, parol testimony would be admissible; and if this be true, then it was an error on this ground to hold it up. It would be easy to illustrate this proposition by an analysis of the will, and by an application of the principles which govern the admission of extrinsic evidence; but that is unnecessary, for this reason, that the very intention which the aid of a court of chancery is invoked to declare, to wit, such a disposition of the estate devised as will protect it from the debts of the devisees, and keep it for the support and maintenance of themselves and their families, is conceded to be the true intention, by that rule of pleading which, upon demurrer, takes as true the statements in the bill. I have no doubt that in point of fact, the testator so intended. Whether that intention shall prevail or not, depends upon the question whether the provisions and limitations in the will, by which that intention is sought to be effectuated, are or are not, in accordance with the laws of Georgia. If they are in conflict with them, the law prevails, the intention yields. And this is really the question submitted to us by this record.

It may be said that this will creates an executory trust; that such trusts can only be enforced or protected by a court of chancery, and therefore the complainants are entitled to a decree, and the demurrer was rightly overruled. If it be an executory trust, then this position is true. Chancery will lay hold of an executory trust, and decree the necessary conveyances to carry into effect the intention of the testator, when from any cause the trustee either will not, or cannot convey without such decree. One of the tests of an executory trust is, the necessity or not of the interposition of equity to enforce the trust; that is to say, if all the limitations in a will are in themselves perfect, if nothing remains to be done by the trustee or a court of chancery, and the parties take immediately under the will, it is not an executory trust. The definition of an executory trust by Mr. Hill, is in the following words: " Where directions are given for the execution of some future conveyance or settlement of trust property, but the particular limitations are not fully or accurately specified, this is an executory trust." *Hill on Trustees*, 328.

A fuller and more satisfactory statement of what is meant by an executory trust than I have elsewhere seen, is found in *Lewis on Perpetuities*, as follows : " But where the settler or testator has purposely framed his dispositive scheme, after the character rather of a declaration as to what are his general intentions and designs, than of a series of formal and sufficient limitations in themselves actually definite, and by their author intended to be complete, *then* he seems designedly to leave the office of carrying out and giving effect to his dispositions, to that jurisdiction which takes cognizance of matters of trust and agreement, and seeks to discover the real intention of parties in their dispositions of, and contracts respecting property." See *Edmondson and Wife* vs. *Dyson*, 2 *Kelly R.* 307 *to* 324; *Lewis on Perpetuities*, 574; 4 *Kent Com.* 218; 1 *Fearne Rem.* 136; *Jarm. on Wills*, 252; 7 *Bac. Ab. Uses & Trusts H.*

Upon examination of this will it will be found that, according to these definitions, and indeed, according to the principles settled in numerous adjudicated cases—a number of which are referred to in the case of *Edmondson & Wife* vs. *Dyson*, 2 *Kelly R.* 307—it does not create an executory trust. The will leaves in the hands of the testator's executors, *in trust* for his two sons, William and Benjamin H. *and their heirs*, certain lands, a negro man, and a grist and saw mill, and the log cart and apparatus thereunto belonging ; it then leaves in the hands of the executors certain real estate *in trust* for the testator's son *Benjamin H. and*

*his children;* in like manner it leaves in the hands of his executors certain other real estate *in trust* for his son *William and his children;* then follows the limitation over, in the following words : " *And if my sons Benjamin H. and William should die without having children, in that case the portion of property I leave for them in trust with my executors, returns back to my estate, and to be equally divided among all the heirs named in this will.*"

There is here a naked deposit of the legal title in the hands of the trustee ; the trust extends, by the terms of the will, no further than the first limitation ; there it is obviously concluded, and but for the subsequent limitation over, the Statute of Uses would unite the use and the legal estate upon the first taker.   The limitations are, first to the two Brantleys and their heirs, and second, upon their dying without children to the heirs of the testator named in the will.   The devise to each of the Brantleys separately, is of like character ; first, to the devisee and his children, and then, upon his dying without leaving children, to the testator's heirs named in the will.   There is no conveyance to be executed by the trustees, no settlement for them to make, nothing whatever for them to do. Nor is there any thing for a court of chancery to decree ; the limitations are perfect in themselves, sufficient, and accurately defined. If this will could be carried into effect, upon the death of the Brantleys without having children, there can be no doubt but that the remainder men would take immediately under the will ; they would be entitled to the property at the hands of the executors, as such, unencumbered with any trust, without a conveyance from the trustees, and without the aid of a decree in chancery ; their title would be perfect under the will.   But in addition to all this, the testator has directed that upon the contingency of the Brantleys' dying without children, the trust shall terminate ; for he wills that the property shall then *revert* to his estate, and be equally divided among the heirs named in his will.   It falls back into his estate, to be divided by *his executors*, and not by the trustees, among his designated heirs.   What is there, then, executory in this trust ? what interests are there in the reversionary devisees, which require chancery powers to protect ?   None whatever.   It is, then, a trust executed ; and if so, the limitations in this will are subject to the same rules of construction as if they were found in a legal estate. 4 *Kent Com.* 219.   It is to that construction—having, as I hope, removed preliminary difficulties from my path—that I now turn my attention.

It is necessary to the conclusion at which we have arrived in the

construction of this will, that we assume that the devisees, William and Benjamin H. Brantley, had no children at the time of the making of the will. This we are authorized, indeed compelled to do, from the statements in regard to this subject in the bill. The pleadings show that neither of them had a child or children at that time. The rule in the construction of pleadings is, that while the language used by the pleader is to receive a reasonable intendment and construction, yet every thing is to be taken most strongly against the party pleading ; for it is to be intended that every person states his case as favourably to himself as possible. 1 *Saund.* 259, *note* 8 ; *De Symonds* vs. *Sheddon*, 2 *Bos. & Pul. R.* 155 ; *Earl of Kerry* vs. *Baxter et al.*, 4 *East R.* 453 ; *Dovaston* vs. *Payne*, 2 *Hen. Bla.* 530 ; *Coke on Lit.* 303, *b ;* 12 *East. R.* 263 ; *Hastings* vs. *Wood.* 13 *Johns. R.* 482 ; 1 *Chitty Pl.* 241, 242.

With the aid, and indeed without it, of this rule of construction, we say that William and Benjamin H. Brantley had neither child nor children at the time the will was made ; for, in the statements in the bill which I have before copied, the complainants say, that Edward Brantley (the testator) being desirous of making some provision for the support and maintenance of his sons, and any family which they might *thereafter* have, &c., made and executed his last will and testament. The desire to make provision is not for *the* family of his sons, which would import an existing family at the time, but for any family which they might have *thereafter*—that is, subsequently to the making of the will. These words import, not a family *in esse*, but a family *in futuro*. The word *family* must mean children, for by the terms of the will it is clear that his sons and *their children* were the objects of the testator's bounty. The bequests are to his sons and their *heirs*, (which word I expect to show means children,) and to each son and *his children ;* and the contingency of the limitation over is, their dying without having *children*. But further and more conclusively, the bill states that one of the devisees, to wit, William, had *a wife* at the time of making the will. As the expression of one thing excludes other things, it is a necessary inference that the other devisee, Benjamin H., had no wife, and of course no child or children ; and that William had a wife, but no child or children. But the evidence drawn from the pleadings as to this matter, is still further cumulative ; for the parties proceed to say, that both of the devisees *now*—that is, at the time of filing the bill—have a wife and a child or children, which, upon the maxim stated, is

equivalent, taken in connexion particularly with the previous statements in the bill in relation to the same subject matter, to a declaration that *then*, that is at the time of making the will, William had no child or children, and Benjamin H. had neither wife nor child or children ; so that we hold it demonstrated, that at the time the will was made, neither of these devisees had either a child or children. ·

Edward Brantley, the testator, in the clause of his will which is now under review, and which is herein-before transcribed, makes three devises : one to his sons William and Benjamin H. *and their heirs*, a second to William and *his children,* and a third to Benjamin H. and *his children*. The limitation over, is to the heirs named in the will, to be equally divided between them, and applies to all the property devised in these several devises. As the terms of the separate devises to William and Benjamin H. are the same, for convenience I shall dismiss one of them, to wit, the devise to Benjamin H., regarding the reasoning as to one applicable to both. Considering, then, first in order the devise to William Brantley, it is our judgment that he takes an estate tail, with remainder, upon his *dying without having a child or children,* to the heirs of the testator named in the will. In the outset, I remark, that courts will, where it can be done, construe limitations into remainders rather than executory devises. The policy of this rule is founded in the fact, that an executory devise cannot be barred. *Loddington* vs. *Kime,* 1 *Salk. R.* 224 ; 1 *Ld. Raym. R.* 203; *Barnfield et al.* vs. *Wetton,* 2 *Bos. & Pul. R.* 327 ; *Doe* vs. *Morgan,* 3 *T. R.* 763; *Purefoy* vs. *Rogers,* 2 *Saund. R.* 380.

It is evident that the testator intended to protect this property for the use of his sons and their children ; this was the primary and leading intention. We have before remarked, that it is the duty of the courts to effect the intention, if they can do so consistently with the rules of law; if they cannot, then it becomes their duty to enforce the law ; for it is infinitely more important that general rules should be maintained, than that the intention of one man, in the disposition of his estate, should prevail. It is the policy of our law to open restrictions upon the descent of property ; it wars with entails ; it favours the right of alienation, and has no sympathy with a policy whose effect is to cast the capital of the State *extra commercium.* Hence our statute abolishing entails.

It is pretty clear that this testator, in consummating his intention

to provide for his sons and their families, supposed that he was, by the first limitation in the devise to William, securing the absolute property in him and his children; and by the limitation over, he intended to vest the absolute property anew in his other heirs, and to defeat its descent or appropriation at his death without issue, according to the due course of administration. Such intention, thus specifically detailed, cannot take effect consistently with the law regulating the limitations. If it could take effect at all, it would be by making of them an executory devise; for at law a fee cannot be limited after a fee. Upon the supposition that we have here an executory devise, I have no doubt that the limitation over would be void for remoteness, as being opposed to the well established rule, that the estate in remainder must take effect within twenty-one years and the life or lives of persons in being and the term of ordinary gestation. · This rule applies as well to executory devises as to estates in remainder. If it is void because creating a perpetuity, then upon that ground the judgment of this Court would be sustained; for the effect of avoiding the limitation over would be to vest the fee in William Brantley, and the property would be liable to pay his debts. The contingency upon which the property passes in remainder is, that William shall " die without *having* children." The word *having* children I think is synonymous with *leaving* children; both words appear to contemplate his death, there being at the time no child or children *in esse*. Now, the word *children*, when found in a devise, is held synonymous with *issue ;* and the words *dying without leaving issue*, unaccompanied by any restrictive expressions or circumstances, import an indefinite failure of issue. So also, the words *dying without leaving children*, unaccompanied by any restrictive expressions or circumstances, imply a dying without *issue generally*. In the ordinary and proper sense of the word *children*, it means the immediate descendants of a person, as contradistinguished from *issue*, but in its legal signification, as applied to testamentary instruments (unless the manifest intention requires a different construction,) it is extended to all the descendants, whether mediate or immediate of the ancestor. *Doe dem. Smith* vs. *Webber*, 1 *B. & Ald. R.* 713 ; *Trash* vs. *Wood*, 4 *Myl. & Craig R.* 324 ; 6 *Reps.* 17 *a ;  Royle* vs. *Hamilton*, 4 *Vesey R.* 437 ; *Doe* vs. *Cavendish*, 4 *T. R.* 741 *note ; Radcliffe* vs. *Buckley* 10 *Vesey R.* 201; 1 *P. Wills. R*, 534; *Willes R.* 348; 3 *T. R.* 484; 5 *Mass. R.* 500; 1 *Mason R.* 224.

It is however to be carefully noted, that when these words are

used in a devise, their force is liable to be controlled and their meaning restrained, either by expressions in the will itself, or by any circumstance extrinsic the gift arising on the face of the will, in relation either to the land or the devisee.   I do not see in this instrument expressions or circumstances in relation to the property or the devisees, which would restrict the generality of the meaning of these words.   *Lewis on Perpetuities,* 195, 196, 197.

It is not my purpose, however, to rest our judgment alone, or mainly, upon this ground, for I do not consider this will in the light of an executory devise.

[2.]   William Brantley, according to the terms used, we think took an estate tail.   The words in the antecedent clause, *and his children,* are words of limitation, and not of purchase.   According to the rules of construction by implication, the subsequent clause, that is, the clause which devises the estate over, has a very important bearing upon the antecedent clause.   The subsequent clause, *in the event of his dying without having a child or children,* passes the fee to the heirs named in the will.   This is utterly inconsistent with the idea of a fee in the children of William Brantley;  "For, (to apply the language of Mr. Story in a similar case,) suppose William Brantley should have children and they should all die in his lifetime, leaving issue, the estate would then, if construed to depend upon having children at his death, pass over to the heirs named in the will, thus entirely defeating the prior estate to the children of William Brantley, although they left issue."   No one can believe, looking at the provisions of this will, that the testator intended the devise over to take effect but upon an extinction of the issue of his son William ;  his issue was the special objects of his bounty.   Upon the supposition that the children of William took a fee, then the testator has made, in the case supposed, no provision for his grand-children ; they are cut out, and his heirs named in the will, already provided for in the will, (and that fact deserves consideration in construing this instrument,) are let in to the enjoyment of the property.   To give, then, any just effect to the word *children,* in the original devise as well as the devise over, it must be considered as meaning *issue or heirs of the body ;*  and although that word in its primary sense, is a *descriptio personarum* who are to take, yet we have already seen that its legal signification is often different, and it is made to mean *issue or heirs of the body,* when the structure of the devises and the exigencies of the will require it.   In *Davie* vs. *Stevens,* the devise was of the fee simple

and inheritance to W. S., *to him and his child or children forever*, (mark how much like this case, yet stronger for the principle,) and if he died before twenty-one years of age, then devise over. Lord Mansfield said : " The words child or children are to the full as restrictive, as if the testator had said, *and if my son die without heirs of his body*. To give the father an estate in fee would be to strike these words out of the will. They must operate to give an *estate tail*, for there were no children born at the time to take an immediate estate by purchase. The meaning is the same as if the expression had been " to A and his heirs," that is to say, his children or his issue." *Doug. R.* 321.

In *Wood* vs. *Baron*, the devise was to the testator's wife for life, and after her death to her daughter A as a place of inheritance, *to her and her children or issue forever;* and if *she should die leaving no child or children*, then devise over. At the time of making the will, A *had a child;* the court nevertheless held that she took an *estate tail*. In this case, Lord Kenyon held, that if the devise was construed to give A a fee simple, the devise over, as an executory devise, would be too remote, being after an indefinite failure of issue. 1 *East. R.* 259.

In *Seale* vs. *Barter*, the devise was to the testator's son A and *his children lawfully begotten*, and in default of issue, to his daughter B *and her children lawfully begotten*; and in default of issue, to his son and daughter equally between them. At the time of making the will the son had no child and the daughter was unmarried. The court held that the son took an estate tail. 2 *Bos. & Pul.* 484.

In *Broadhurst* vs. *Morris*, the devise was to testator's daughter A for life; at her death to her husband for life; at his decease to his grand-son W *and his children lawfully begotten, forever;* but in default of such issue, to his grand-son A, his heirs and assigns forever. The court held that W took an estate tail. 2 *Barn. & Adol. R.* 1.

In the case of *Parkman* vs. *James Bowdoin and another*, there was a devise to A for life, and after her death to her second son B *and to his lawfully begotten children, in fee simple, forever;* but in case he should *die without children lawfully begotten*, then devise over. At the time of making the will, B had no children. Judge Story, reviewing the authorities and arguing the case upon principle, in one of his ablest opinions, held that B took a fee tail, concluding his review of the authorities with the following remarks : " The strong ground upon which the word *children* has

been construed to be a word of limitation, when there is a devise over upon failure of children, is, that otherwise, if there should be children born who should die during the lifetime of the parent, leaving issue, the latter would not take."

These cases, and these considerations, apply to this case with commanding force. This case is in its terms almost identical with a number of the cases referred to; I deem it unnecessary to point out the identity or similitude. There is one feature in this case common to a number of the cases which I have adverted to, which merits a more serious regard. It is the fact, that William Brant-ley and Benjamin H. also, had no child at the time the will was made. That fact, aside from any other view of this case, makes the antecedent devise to them respectively, an estate tail. It was so settled in *Wild's* case, in 6 *Coke R.* 17, and I believe has been so held ever since. " And this difference," says Lord Coke, "was resolved for good law, that if A devises his lands to B *and his children or issues,* and he hath not any issue at the time of the de-vise, that the same is an estate tail; for the intent of the testator is manifest and certain, that his children, or issue, should take, and as immediate devisees they cannot take, because they are not *in rerum natura;* and by way of remainder they cannot take, for that was not his intent, for the gift is immediate, therefore these words shall be taken as words of limitation, *scilicet,* as much as *children or issues of his body."* *Wild's* case, is this case so far as the devise to Brantley is concerned, without regard to the limitation over. In *Wild's* case there was no limitation over, here there is; and I have endeavoured from the character of that devise over, to show that this was an estate tail to Brantley. Aside from that limitation over, upon the reasoning of Lord Coke, he took an es-tate tail. In *Wild's* case, there was a precedent life estate, but Judge Story ruled, in *Parkman* vs. *Bowdoin et al.,* that that made no difference in the application of the principle. All the reason-ing in favour of the decision in *Wild's* case that could be well adduced, is embraced in the foregoing extract from Coke. I should but weaken if I should undertake to enlarge upon it. *Wild's* case was recognised in the following cases, some of which I have already cited. *Buffar* vs. *Bradford,* 2 *Atk. R.* 220; *White* vs. *White, Willes R.* 348; *Wharton* vs. *Gresham,* 2 *W. Black. R.* 1083; *Cook* vs. *Cook,* 2 *Vern. R.* 545; *Oates* vs. *Jackson,* 7 *Mod. R.* 439; *King* vs. *Melling,* 1 *Vent. R.* 231; *Hughes* vs. *Sayer,* 1 *P. Wills. R.* 534; *Davie* vs. *Stevens. Doug. R.* 321; *Hodges* vs. *Mid-*

*dleton, ib.* 431; *Scale* vs. *Barter,* 2 *Bos. & Pul. R.* 485; *Broadhurst* vs. *Morris,* 2 *Barn. & Adolph. R.* 1; *Moore R.* 397; 12 *East R.* 253, 261; 8 *Mass. R.* 1 *to* 41; *Cowp. R.* 410.

To sum up the argument, the devise to Brantley is an estate tail, because,

*First*—There was no child or children of William Brantley *in esse* at the time of making the will, and therefore they could not take an immediate estate.

*Secondly*—If the children took a fee, then if the children were born in the lifetime of William Brantley, and should die, leaving issue, in his lifetime, the property would not go to that issue, but pass over, which would be manifestly contrary to the intention of the testator; it being clearly the will of the testator, that the limitation over should take effect *only* upon the extinction of the issue of his sons.

*Thirdly*—Because if *children,* in the devise, is construed to mean children living at the death of William Brantley, and not the whole class of issue, then the devise over would be defeated if he should die leaving children who should afterwards die without issue; in that event, the property would descend in due course of administration to the heirs of William's children, and thus the intention of the testator as to the limitation over, would be defeated.

*Fourthly*—Because if this will is construed as an executory devise, the limitation over is void for remoteness. If it is, it is the duty of the Court to construe it, so as to give it effect by way of remainder. For these reasons, sustained as I conceive them to be by quite sufficient authority, we are of the opinion, that in the several devises to William and Benjamin H. Brantley, each took an estate tail, with remainder to the heirs named in the will.

The devise to Benjamin H. and William Brantley jointly, differs from the several devises to them which I have been considering, in the use of a single word. The joint devise is to them and *their heirs;* the separate devise is to the devisee and *his children.* The two words in this will mean the same thing, to wit, *issue* or *heirs of the body.* To prove this, I refer to the reasoning and authorities already adduced, in the construction of this will. Explaining the antecedent limitation by the limitation over, upon the doctrine of implication, *heirs,* in the first, means what *child* or *children* means in the second instance. The testator gives the property to W. and B. and their *heirs,* but it is to pass over upon their dying, both of them, without *child* or *children.* In the latter instance we

have seen that *child or children* means *issue ;* the law, therefore, implies that the word *heirs* in the first limitation means *issue* or *heirs of the body.* The word *heirs* in a will, primarily imports a fee, but its meaning may be restrained, where the effectuating of the intention requires it, by subsequent limitations. The legal intention in this case requires this restriction ; for I have before undertaken to demonstrate, that, upon the construction which the law places upon the instrument, the intention would be defeated if the devisees took a fee.

In the case of *Davie* vs. *Stevens, Doug. R.* 321, the devise was to A and his children lawfully begotten, and in default of issue, to B and her children lawfully begotten. Lord Mansfield said, " the meaning is the same as if the expression had been, to A and *his heirs*—that is to say his *children* or *his issue* "—demonstrating that *heirs* and *children* meant the same—that is, *issue* or *heirs of the body.* The illustration used by Lord Mansfield, is the case before us. The whole matter is illustrated by Mr. Lewis in treating of estates by implication, as follows : " Suppose, for example, land be devised to *A and his heirs,* but if he dies without heirs of his body, or without issue, to B. It is true, in terms, that an estate in fee is given to A, and a limitation is superadded, which, on the supposition of A taking such an estate, can only be good by way of executory devise ; and it is also as true, that if A take a fee simple, the executory devise must be void, as too remote. But the law regards the limitations in question in quite a different light. The testator has shown, by limiting over the estate to B on the death of A without issue, that A and *his issue* were the intended objects of the preceding gift, and that A was not to have such an estate as the law raises under a limitation to a man and *his heirs,* that is, a fee simple. The *issue,* and not the *heirs,* of A being, with him, the objects of the gift, the law pays respect to such intention, and decides that the purpose may be effected by giving A an estate less than a fee simple, and an estate, too, the alienation of which, in bar of the issue, requires greater solemnities than the alienation of a fee simple. All this is effected by curtailing the estate expressly limited to A, from a fee simple to a *fee tail.*" *Lewis on Perpetuities,* 177, 178 ; 9 *East R.* 382 ; *Cro. Eliz.* 525 ; *Cro. Jac.* 22 ; *ib.* 290 ; *Willes R.* 1 ; 1 *Jarm. Wills* 487 ; 2 *Prest. Estates* 504.

We think, therefore, that the devise to William and Benjamin H. stands upon the same footing with the others, and pass upon it the same judgment.

It only remains for me to add, that if, according to the [3.] English law, these parties take an estate tail, it is converted into a fee simple by the statute of Georgia. *Prince* 246. The property is theirs, and liable to their debts. Let the judgment below be reversed.

Judgment reversed.