LAMAR   *et al. vs.*   PEARRE.

1. A trust created by will being nominally for the testator's daughter and her children, born and to be born, but the daughter to have the possession, profits, use, enjoyment and control of the property during her life, and at her death the same to be divided amongst her surviving children, and the children of her deceased children, the appointment of a new trustee for the daughter alone, made at chambers, under the act of February 20th, 1854, upon the joint petition of her and the original trustee, without representation or consent of the children, did not invest the trustee so appointed with the legal fee, but only with a legal estate commensurate with the daughter's equitable estate for life.   If the original trustee was clothed with an executory trust for the remaindermen, he continued clothed with it notwithstanding his discharge as trustee for the beneficiary of the life estate.

2. A sale and conveyance of the land afterwards made by her second trustee, as such, under an order granted in term upon his *ex parte* petition, to which only she assented, her children not being represented in the proceeding nor made parties thereto, passed an estate for her life only, although the deed purported to convey the fee and the purchaser paid full value.

3. Until the death of the daughter, the statute of prescription did not begin to run in favor of the purchaser against the children and grandchildren, their estate in remainder, whether vested or contingent, legal or equitable, being attended with no right of entry

or of action by themselves or by any one for them whilst she was in life.

July 22, 1889.

Trusts and trustees. Estates. Practice. Remainders. Parties. Sales. Deeds. Prescription. Before Judge RONEY. Columbia superior court. March term, 1888.

Reported in the decision.

DESSAU & BARTLETT and McNEILL & LEVY, for plaintiffs.

W. M. & M. P. REESE, for defendant.

BLECKLEY, Chief Justice.

The will of Gazaway Davis (who died in 1845) reciting that the testator was desirous to place his daughter, Mary Ann Lamar, wife of Henry G. Lamar, and the children she then had and might thereafter have, free from the burden of want, by securing to her and them property both real and personal, constituted Gazaway D. Lamar trustee for her and her children, " as herein provided." It then proceeded to give and devise to Gazaway D. Lamar, slaves, live-stock, household and kitchen furniture, farming utensils, corn, wheat and other personalty, and the plantation in Columbia county now in dispute, together with other real estate, this clause of the will concluding as follows :

"To have and to hold the aforesaid property as trustee for my aforesaid daughter, Mary Ann Lamar, and the children she now has or may hereafter have, for and during her natural life, the same, together with the increase and profits, to remain in her possession, use, occupation, enjoyment and control while living, and after her death the same to be equally divided, share and share alike, between her surviving children and her grandchild or children. Should any of her

children have departed this life leaving a child or children, in such event said grandchild or children is or are to receive the respective por_ tion which his, her or their father or mother would have received were said father or mother still living; to have and to hold the same to them and their heirs forever."

The will bore date in 1843. How many children Mrs. Lamar had at that time, or at the death of her father, does not appear. She died in May, 1882, leaving surviving her six children, nine having previously died, one of whom left a child. This action of ejectment was brought February 3d, 1885, by John Doe upon the demise of four of the surviving children, the grandchild left by a deceased son, and seven other grandchildren, the children of a daughter who died subsequently to the death of Mrs. Lamar; the defendants being Richard Roe as casual ejector, and B. E. Pearre as tenant in possession. The premises sought to be recovered are the plantation in Columbia county devised by the will.

The defendant claimed title both by conveyance and by prescription. His muniments of title consisted of the following documents:

(1) A petition to Hon. Henry G. Lamar, judge of the superior court of the Macon circuit, exercising jurisdiction in chancery. It was signed by Mary Ann Lamar and Gazaway D. Lamar, and purports on its face to be the joint petition of her and of him as her trustee. It represented that he was appointed her trustee by the last will and testament of Gazaway Davis, as well as by an order of the superior court of Bibb county, to both of which it asked leave to refer without setting them forth. It represented that he had up to that time faithfully performed the duties of said trusteeship, that he had removed out of the county of Bibb, and could not therefore continue to perform such duties without great inconvenience to himself as well

as to the *cestui que trusts*, that he held lands in com-
mon with her, and wished to convey a more perfect
title to her by way of trusteeship than she then had.
For these reasons it prayed for an order changing
the trusteeship held by him, and for the appoint-
ment of John Lamar, or some other fit and proper
person, as trustee for her, and in lieu and instead of
Gazaway D., and that the latter be discharged from
any further duty connected with said trusteeship. The
petition is without date, and annexed to it is a cer-
tificate signed by John Lamar, that he was willing to
receive the appointment of the trusteeship referred to
in the petition, and would accept and faithfully per-
form the duties thereof if appointed. Then comes an
order in chambers, dated July 12th, 1858, signed by
Henry G. Lamar, judge of the superior court of the
Macon circuit, reciting that upon the petition of Mary
Ann Lamar and Gazaway D. Lamar, her trustee, it
appearing that Gazaway D. having been appointed the
trustee by the last will and testament of Gazaway
Davis, as well as by an order from this court, and that
it is for the best interest of the estate held by him in
trust for her, that said trusteeship should be changed,
and some other fit and proper person appointed instead
of him, and it appearing from the certificate of John
Lamar that he is willing to accept the appointment;
and ordering that Gazaway D. Lamar be discharged
from the duties of said trusteeship, and that John
Lamar be appointed the trustee for her in his stead,
and that this order be entered on the minutes of Bibb
superior court.

(2) A petition signed "John Lamar, trustee for Mary
Ann Lamar," addressed the same as the preceding peti-
tion, and on its face purporting to be the petition of
John Lamar, trustee for Mary Ann Lamar, and repre-

senting that on the 12th of July, 1858, he was appointed trustee for her in lieu and instead of Gazaway D. Lamar, who had been appointed to said trusteeship by the last will and testament of Gazaway Davis, and who resigned said trusteeship on the day aforesaid; that John Lamar now holds, as trustee aforesaid, a large tract of land in the county of Columbia, besides lands in the county of Baker, and a number of negroes; that by reason of the unproductiveness of the Columbia land, and the superior advantages and convenience of the Baker land, both to the trustee and the *cestui que trust,* it would be greatly to the benefit and interest of the trust estate that the Columbia land should be sold, and the negroes thereon removed to the county of Baker; that the trust estate is encumbered with a debt, to discharge which it will become necessary to sell some portion of said estate. Therefore he prays an order allowing him to sell said lands in Columbia county, and after discharging the debt with the proceeds, that he may invest the balance in such property as to him may seem best for the interest of said trust estate. This was followed by a certificate signed by Mrs. Lamar, in which she declares that she joins in the petition, and is willing that the prayer of the petitioner should be granted. Next comes an order headed "Bibb superior court, November term, 1858," dated at the bottom, 20 November, 1858, and signed officially by Judge Lamar. The order is in these terms:

"It appearing to the court by the petition of John Lamar that he is trustee for Mary Ann Lamar, and that he now holds, as trustee aforesaid, two large tracts of land, one in the county of Columbia, and the other in the county of Baker, in the State of Georgia, and a number of negroes, and that it is greatly to the interest of said trust estate that said land in said county of Columbia and State of Georgia be sold, it is therefore ordered by the court, that said John Lamar is hereby authorized and allowed to sell the said land in the county of

Lamar *et al. vs.* Pearre.

Columbia, and that out of the proceeds thereof, after paying the debt alluded to in his petition, he purchase such other property as to him may seem best for the interest of said trust estate. It is further ordered that this order be placed on the minutes of Bibb superior court."

(3) A deed from John Lamar, trustee for Mary Ann Lamar, to the defendant, B. E. Pearre, dated December 9th, 1858, and conveying the premises in fee simple, with warranty of title, the consideration paid being $15,450. There was evidence at the trial indicating that the defendant entered under this deed, claiming the land as his own, made improvements costing many thousand dollars, and has continued to hold and claim adversely ever since. As to the character, continuity and length of his possession, there was no dispute.

Both trustees died before the action was brought. John died in the lifetime of his mother; Gazaway D. after her death. Neither of them left issue. The presiding judge, to whom was referred the case as a whole —the facts as well as the law,—construed the will of Gazaway Davis as conveying the legal title in fee to the trustee, and held that a good prescriptive title was shown in the defendant; and judgment for the defendant was rendered accordingly.

After protracted and laborious study of the case, we have arrived at the conclusion that the nice and doubtful question as to whether Gazaway D. Lamar, the original trustee, took the legal estate in fee, or only an estate for and during the life of his mother, Mrs. Lamar, need not be decided.

1. Whether the court below was right or wrong in holding that the legal fee passed by the will to the first trustee, we are confident that it never passed to the second, the one to whom leave to sell was granted, and who executed the deed to the defendant. John Lamar was appointed by the order of July 12th, 1858, trustee

for Mrs. Lamar only. There is no hint or intimation in either of the petitions, in either of the orders, or in the deed, that he was or was to be trustee for the children, or that he acted or was to act in that capacity. Although Judge Lamar was the father of both trustees, as well as the husband of the *cestui que trust* for life, he was perfectly competent, with the consent (code, §205) of these three persons, all of whom did consent, to substitute, by an order at chambers, one of the sons for the other as trustee for Mrs. Lamar; but without the additional consent of all the other beneficiaries of the trust, given by themselves if competent to consent, or by some proper representative if they were not competent, he could not lawfully remove one trustee and appoint another as to the estate in remainder. Acts of 1853-4, p. 59. Judged by its own terms, and restricted to what these terms express, the order in question was perfectly valid. To hold it free from legal infirmity, it is requisite either to construe the trust as limited by the will in duration to the life of Mrs. Lamar, or if that cannot be done, to adhere to the terms of the order. Where two constructions are open to our choice, it is our duty, in favor of jurisdiction to pass the order and the proper exercise of the same, to adopt that construction which treats the order as completely legal, rather than that which would hold it partially illegal, and, to that extent, void or voidable. Were it conceded that the trustee himself could represent the remaindermen in procuring an order of sale, that concession would not involve the recognition of any power on his part to represent them in obtaining an order for his own abdication of the trust and to have a successor appointed. The act of 1854 provided for removal and appointment, at chambers, only in cases in which all parties in interest were represented and consenting. There can be no

doubt that the terms " parties in interest" include living persons named as objects of the testator's bounty, though described as a class, and though the rights of individuals of the class might be only contingent.

The record does not disclose how many of the children of Mrs. Lamar (in addition to the two trustees) had attained to years of discretion at the time the order was granted, but it is certain that one of them at least (the plaintiff, Mrs. Thornton) had so done, for it appears that she was married in the year 1849. Had the proceeding been under the act of .1854 as modified by the code, §2320, her consent would have been essential; but as the law stood when this transaction took place, not only she but all who had an interest, whether adults or minors, had to be represented and consenting. There is nothing to suggest that any one represented the remaindermen unless the trustee did it, and surely there is no need for argument to show that a trustee, when in the act of surrendering his office to another, represents nobody but himself. Suppose he were called to account by the remaindermen for some omission of duty as their trustee occurring after this *ex parte* discharge, could he defend by setting up that discharge as terminating his trust relation to them? Certainly not. If he ever was their trustee with any active duty to perform in their behalf, he was none the less so after than before he resigned as trustee for Mrs. Lamar.

To hold, therefore, that Judge Lamar intended the trust devolving on the new trustee to be broader than the order expresses, would be to impute to him the official oversight of granting at chambers the prayer of an *ex parte* petition without having all the parties at interest represented. Rather than make this imputation, we think it preferable, and much more safe, to confine the order as he himself confined it, and hold that the

appointment of John Lamar was as trustee for Mrs. Lamar and her only, leaving any trust title there may have been originally in Gazaway D. in behalf of children and grandchildren, to abide in him after the order as before. Supposing the trust of the will to have included both the life estate and the remainder, it would have been competent for the testator to constitute by the will one trustee to take the former estate, and another the latter estate. Judge Lamar, as chancellor, representing the testator, made this severance; and after the severance was thus made, the two trustees occupied the position they would have occupied from the beginning had the testator done as we have suggested. It will be noticed that as trustee for the children, Gazaway D. Lamar had no power of possession or management during the lifetime of Mrs. Lamar, the will declaring that the property, " together with the increase and profits," was " to remain in her possession, use, occupation, enjoyment and control while living." If he had anything whatever to do in behalf of the children, it was not until after her death, and then only to cause to be made a division in terms of the will. It is not quite certain that even this much devolved upon him. As the use, enjoyment and profits were all given to Mrs. Lamar whilst she lived, the children had no share in them, except what she chose to allow. For any participation in these, the testator made the children dependent upon her bounty. He gave her the means to provide for them during her life, instead of directly making the provision himself.

2. If what we have said be sound, it is certain that the defendant acquired no title to the property by the deed (although it purports to convey in fee simple) of John Lamar as trustee of Mary Ann Lamar, for a longer period than the duration of her life. Being her

trustee alone, and her interest being limited to a life estate, he never had or acquired any larger interest so as to transmit the same. Furthermore, when the order of sale was obtained, the remaindermen were not parties to the proceeding, nor before the court, either by themselves or their trustee, John Lamar not being trustee for them.

3. With reference to prescription the case is equally clear. Mrs. Lamar and her trustee could without, and certainly with, the order granted by Judge Lamar in November, 1858, sell and convey the property during her life. As by the terms of the will she was entitled to the possession, use, occupation, enjoyment and control of it, she and her trustee, the chancellor concurring, could undoubtedly substitute a purchaser in these same rights. And as in Georgia no forfeiture attends a conveyance by a tenant for life of a larger estate than he owns, there could have been no entry during the lifetime of Mrs. Lamar upon the purchaser, either by the remaindermen or by Gazaway D. Lamar as their trustee. Had he or they brought an action against this defendant to recover the possession of this property pending the life of Mrs. Lamar, there is no possible doubt that the action must have failed. Mr. Pearre could have defended the same as effectually as Mrs. Lamar could have defended a like action against her had there been no sale and she had remained personally in possession. Statutory prescription proceeds upon the assumption that there is *laches* in not suing; but here there was no *laches* on the part of any one during the lifetime of Mrs. Lamar; for any suit that could have been brought by any person whatsoever, must have been utterly fruitless. It cannot be a sound theory of the law to treat the statutory prescription as running in favor of a possession which, for the time being, was

secure against any action that could possibly have been brought; and such was the possession of Mr. Pearre up to the time of Mrs. Lamar's death. And this suit was brought in due time thereafter.

We confine our discussion and decision to matters which must have been considered by the court below in reaching the conclusion that the defendant had a good title by prescription. Other matters discussed in the briefs of counsel, but which the court below, under its ruling on prescription, had no occasion to adjudicate, we leave to be dealt with upon a new trial. It is best that these elements be canvassed over, with a clear understanding that the pressure of the case, as to the ultimate result, is upon them with no complication with the element of prescription.

There ought to be another trial, and it is so ordered.

Judgment reversed.