## FLEMING *v.* HUGHES.

1. Where property was devised and bequeathed to a named person to be held by him in trust for the sole and separate use of a daughter of the testator for and during the term of her natural life, with remainder to the child or children of such daughter living at the time of her death, and in default of such child or children, then to the right heirs of the daughter, the legal title passed to the trustee as to the life-estate only. The remainder thus created was a legal and not an equitable estate.

2. A successor of the trustee named in the will could not, even under an order granted by a chancellor, sell and convey any greater interest in the property which passed under such a devise than the estate of the life-tenant therein.

August 3, 1896. Argued at the last term.

Complaint for land. Before Judge Callaway. Richmond superior court. April term, 1895.

*Fleming & Alexander*, for plaintiff in error.
*William K. Miller* and *Joseph R. Lamar*, contra.

SIMMONS, Chief Justice.

Charles DeLaigle, of Richmond county, Georgia, executed his last will on December 29, 1865, and it was duly probated after his death on May 3, 1866. By the 9th item he made the following devise: "To my son Louis I give, devise and bequeath three other such parts [meaning three fourths of his estate after the payment of his debts] to be held by him in trust for the sole and separate use of my daughters, Martha, Mary and Emma, one part to each respectively for and during the terms of their respective lives, with remainders to such child or children of my said daughters respectively as may be living at the

time of their respective deaths, and in default of such child or children, then to the right heirs of each of my said daughters respectively."

After paying the testator's debts, his executors, on April 17th, 1867, assented to the above devise, and allotted the property now in dispute to said Louis DeLaigle as trustee for the said Emma DeLaigle during her natural life, with the remainder and executory devise over, as mentioned above. At that time Emma DeLaigle, the life-tenant, was a minor and unmarried. Louis DeLaigle, the original trustee, died in 1867 after the division of the testator's estate, and on October 14, 1868, while said Emma De-Laigle was still a minor and unmarried, Andrew W. Walton, upon her application, was appointed as trustee for *her alone* by the judge of the superior court of Richmond county. She attained her majority on January 9, 1869, being still single. Walton resigned his trust on March 5, 1869, and on the next day E. F. Verdery was appointed trustee for *her alone*, upon her application, by the judge of said court, at chambers. No bond was required of Verdery, and none was given by him.

In 1870, while the said Emma DeLaigle was yet unmarried, and, as above stated, over the age of twenty-one years, upon the joint petition of herself and said Verdery, the judge of the superior court of said county of Richmond, at chambers, granted an order authorizing said Verdery to sell the fee in said property for reinvestment, and it was sold by him under said order in that year. The said Emma DeLaigle, the life-tenant, married in 1872, and died January 13, 1894, leaving one child then living by said marriage, who attained her majority March 17, 1893, and who is the plaintiff in this case, and the defendant in error in this court. The suit for the land in dispute was commenced by this child and sole remainderman on March 15, 1894, or less than two months after the death of the life-tenant. A verdict was rendered for the plaintiff. The

defendant moved for a new trial, which was refused by the court below. Whereupon the defendant excepted, and brought his case to this court.

1. The quantity of estate held by the original trustee, Louis DeLaigle, is not material to a correct decision of this case; and yet we think, aside from this conclusion, that such estate only extended over the life-tenancy, and was liable to cease, by the purposes of the trust ceasing, before the life-tenant's death. The extent of a trustee's estate is measured by the purposes of the trust, whether the estate is granted or devised to the trustee alone, or to him and his heirs. This is a principle of law sustained by all authorities. Accordingly, in either event, the trustee may hold a chattel interest, an estate for the life of a life-tenant, or a fee. There being no need of a trustee to preserve the contingent interests in this case, as will be hereinafter fully explained, it follows that the purposes of the trust in this case were, first, to protect the estate of the life-tenant during her minority, and, secondly, from the marital rights of any husband with whom she might intermarry. For these purposes the trust, when created in the year 1865, was good. Code of 1882, §2306, 2307, which is the same law embodied in the Codes of 1863, 1868 and 1873; *Fears* v. *Brooks*, 12 *Ga.* 195-197. But when those objects ceased by the life-tenant arriving at the age of twenty-one years, after the married woman's act of December 13, 1866, without marrying, the estate of the original trustee, were he then in life, would have become wholly passive and executed, and the life-tenant and contingent beneficiaries would have then held legal estates, just the same as if the testator had originally devised the property to "Emma DeLaigle during her natural life, with remainder to such child or children as she might leave living at the time of her death, and in the event of no such child or children, then to her own right heirs." Code of 1882, §2314; *Liptrot* v. *Holmes*, 1 *Ga.* 381-389-391; *Wiley* v. *Smith*, 3 *Ga.*

559-560; *Adams* v. *Guerard*, 29 *Ga*. 651, 672, 677; *Milledge* v. *Bryan*, 49 *Ga*. 397, 409, 410; *Rogers* v. *Cunningham*, 51 *Ga*. 40(1); *Glover* v. *Stamps*, 73 *Ga*. 209; *Knorr* v. *Raymond*, 73 *Ga*. 751 (11 *c* and *d*); *Kile* v. *Fleming*, 78 *Ga*. 1 (1 and 3), 4; *Harrold* v. *Westbrook*, 78 *Ga*. 5, 11; *Blalock* v. *Newhill*, 78 *Ga*. 245; *Carswell* v. *Lovett*, 80 *Ga*. 36, 41, 42; *East Rome Town Co*. v. *Cothran*, 81 *Ga*. 361 *et seq.*; *DeVaughn* v. *McLeroy*, 82 *Ga*. 696, 698; *Baxter* v. *Wolfe*, 93 *Ga*. 334. See also, Payne *v*. Sale, 2 Dev. & Bat. Eq. (N. C.) Rep. 455; Ellis *v*. Fisher, 3 Sneed (Tenn.), 231, 65 Am. Dec. 52; Ware *v*. Richardson, 3 Md. 505, 56 Am. Dec. 762, 769, 775; Schaffer *v*. Lavretta, 57 Ala. 14, 18, 19; Ward *v*. Amory, 1 Curtis (U. S. C. C.), 427, 428; Webster *v*. Cooper, 14 How. (U. S.) 488, 499, 500; Fearne on Contingent Remainders, 57-59; 3 Jarman on Wills (R. & T.'s ed.) 70-81. And but for the fact that the decisions of this court hold that a naked trust for a minor is executory during the minority of the beneficiary, under §2306 of our code, the statute of uses would have passed the legal estate *instanter* to the first taker under the devise in this case. *Walker* v. *Watson*, 32 *Ga*. 264; *Bowman* v. *Long*, 26 *Ga*. 142, 146, 147; *Pope* v. *Tucker*, 23 *Ga*. 484; Ramsay *v*. Marsh, 2 McCord S. C. 252, 13 Am. Dec. 717, and note 721; Snelling *v*. Lamar, 32 S. C. 72, 17 Am. State Reports, 835, 837, 838.

As shown by the decisions of this court first above mentioned, and the authorities cited therein, our married woman's act of 1866 terminates a trust far quicker than the statute of uses. Under the latter statute, a trust for a woman, married or single, became executed only by the death of herself or her husband in her lifetime; while under our act first mentioned, the trust, if created before, terminates at the date of the act, if the *cestui que trust* was then twenty-one years of age, and if afterwards, upon like condition, it became a legal estate *instanter*, from the

date of the deed, or the death of the testate, whether the estate be solely for such beneficiary, or there is a limitation over in trust, or not.    Therefore, the cases of *Askew* v. *Patterson,* 53 *Ga.* 209, *Ford* v. *Cook,* 73 *Ga.* 215, *Knorr* v. *Raymond,* 73 *Ga.* 764, *Cushman* v. *Coleman,* 92 *Ga.* 772, 774-5, and other cases like them, where trusts were expressly created for both the life-tenants and remaindermen, and the life-tenants died before our married woman's act, as well as such cases of trust as have been determined otherwise than as above after said act, without its effect being made a question for this court to decide, are clearly distinguishable from, and have no application whatever to the case at bar.

Moreover, under the old law in England, and possibly in this State before the code, a trust to preserve a contingent remainder, which was only necessary because such a remainder was then liable to be defeated by the premature termination of the life-estate, by forfeiture or otherwise, was usually made by granting or devising the remainder after the life-estate, and during the life of the life-tenant, to a trustee for that express purpose, with a legal remainder over to the contingent beneficiaries after the death of the life-tenant.    Tiedeman on Real Property, 424; 2 Washburn on Real Property, 509; 4 Kent's Com. 256; 2 Blackstone, 171-172; Fearne on Contingent Remainders, m.p. 326; 2 Leading Cases in American Law of Real Property, p. 367; Note 17 Am. State Rep. 839.    Or by making the grant or devise direct to a trustee for the life-tenant, with the legal remainder over.    Moody *v.* Walters, 16 Vesey, 294.    Under either mode, the active duties of such a trustee were only called into action in behalf of the remaindermen during the life of the life-tenant, if at all, as to take possession of the property until the death of the life-tenant, on account of some act of the latter which amounted to a forfeiture of, or otherwise terminated prematurely, the life-estate which supported the contingent remainder.

These duties, even under the old law, never required such a trustee to hold the fee, or made the estate of the contingent beneficiaries equitable.  See the authorities last cited; Webster *v.* Cooper, *supra*; Compere *v.* Hicks, 7 T. R. 433; White *v.* Simpson, 5 East. 163, 171, 172; Fearne on Contingent Remainders, m.p. 326; 3 Jarman on Wills (R. & T.'s ed.), 82 *et seq.*

But in Georgia, since our code, "No particular estate being necessary to sustain a remainder under this code, the defeat of the particular estate for any cause does not destroy the remainder."  Code, §2264.  Section 2260 also says, "No forfeiture shall result from a tenant for life selling the entire estate in lands; the purchaser acquires only his interest."  And "wherever there are such statutes, it is not necessary to interpose a remainder to trustees" to preserve a contingent remainder.  Tiedeman on Real Property, sec. 424, p. 342.  This is now even the law in England.  *Ibid.*  Moreover, as our code also provides that, "An absolute estate may be created to commence in future, and the fee may be in abeyance without detriment to the rights of subsequent remainders" (Code, §2247), it follows that it is not necessary in Georgia, since our code, whether a trust for the life-tenant is created or not, for the fee to pass out of the grantor or devisor with the particular estate.  See also, 2 Leading Cases in American Law of Real Property, 277, 278, 354, 355.  And it seems clear that the executory devisees in this case, as the possessors of a legal contingent estate, while the contingent remainderman in this case was unborn, could have enjoined waste by the life-tenant without the aid of a trustee.  2 Leading Cases in American Law of Real Property, 376; *Griswold* v. *Greer*, 18 *Ga.* 545, 550.

2.  The controlling questions in this case, in our opinion, are, first, whether a judge of the superior court in this State had any power at chambers in 1869 to appoint a trustee solely for an unmarried woman twenty-one years

of age, since the married woman's act of 1866; and secondly, whether such a judge was invested with any authority at chambers in 1870, upon the petition of such appointed trustee and his alleged *cestui que trust,* the life-tenant, to authorize him to sell the fee in the property now in dispute for reinvestment. Both of these questions must be answered in the negative. As to the appointment of the trustee for the life-tenant being void, on account of her then possessing a legal estate, see *Milledge* v. *Bryan,* 49 *Ga.* 411; *Carswell* v. *Lovett,* 80 *Ga.* 41, 42, and cases there cited. And as to the want of any power to grant the order of sale for reinvestment so as to bind either the contingent remainderman, or executory devisees, there being no trust estate for them, and no alleged trustee, or other person representing them, see *Knapp* v. *Harris,* 60 *Ga.* 398, 403; *Pughsley* v. *Pughsley,* 75 *Ga.* 95; *Rogers* v. *Pace,* 75 *Ga.* 436; *Taylor* v. *Kemp,* 86 *Ga.* 185; *Baxter* v. *Wolfe,* 93 *Ga.* 334.

Even if the estates of the life-tenant and the limitation over to the contingent beneficiaries were both equitable when E. F. Verdery was appointed trustee for the life-tenant alone in 1869, he could not thus become trustee for the remainderman, or executory devisees. He would be trustee for the life-tenant only, and the original trustee, if he were then in life, would still be trustee for the contingent interests. *Lamar* v. *Pearre,* 82 *Ga.* 354. And in the event of the original trustee's death at that time, which was true in this case, his legal representatives could alone represent their interests as trustee. 27 Am. & Eng. Enc. of Law, p. 92, and authorities cited in notes.

No prescription can be shown against the defendant in error in any view of this case, whether her remainder be legal or equitable, as her action was commenced within seven years from the death of the life-tenant, and none could have been legally commenced by her, or by any person for her, during the existence of the life estate. *Bull*

v. *Walker*, 71 *Ga.* 196 (5 and 6); *Bagley* v. *Kennedy*, 81 *Ga.* 721; *Taylor* v. *Kemp*, 86 *Ga.* 181(2), 184; *Lamar* v. *Pearre*, 82 *Ga.* 362, 363.

We, therefore, conclude that the judgment of the court below be                                    *Affirmed.*