### ALLEN *et al.* v. HUGHES *et al.*

1. A deed executed in 1858, conveying certain described property to C. in trust for the sole and separate use of M. G. H., the grantor's wife, for and during her natural life, and at her death to her children the issue of the existing marriage between her and the grantor, said children to share equally in the same, vested in the trustee named title to the life-estate only, and not to the estate in remainder.

2. Such a deed is in proper custody when held by the wife, and the fact that after the death of the grantor the instrument was found in a trunk which contained papers both of the grantor and the life-tenant, does not rebut the presumption of delivery raised by the due record of the instrument.

Argued December 14, 15, 1898. — Decided March 16, 1899.

Complaint for land. Before Judge Lumpkin. Fulton superior court. June 22, 1898.

*Candler & Thomson* and *E. M. & G. F. Mitchell*, for plaintiffs in error.

*Goodwin & Westmoreland* and *Hamilton Douglas*, contra.

LITTLE, J.    Suit was brought in the court below to recover the possession of a certain lot of land in the city of Atlanta. The title set out by plaintiffs was based on a deed made by Hughes, their father, to Hayden Coe, trustee, on September 8, 1858.    The preamble to the deed of conveyance is as follows: "Whereas the said Peter A. Hughes has recently become possessed of some money which his said wife inherited from her uncle, the late Caswell Mimms, of Charleston District, South Carolina, deceased, and said money having been invested in the real and personal property hereinafter described, by the said Peter A. Hughes, and he being desirous of making provision for his said wife Mary Grace, and the children which she now has or may hereafter have as the issue of the present marriage, against future contingencies and misfortune and for their support and maintenance, and whereas the said Peter A. Hughes is desirous of securing the said real and personal property hereinafter described to the said Mary Grace, wife of the said Peter A. Hughes, that she may enjoy the same during her natural life, together with the rents, issues, and profits arising therefrom, at her death to the children borned and to be borned of the present marriage, in remainder, share and share alike."    Then follow the words of the conveyance: "Now for and in consideration of the natural love and affection which the said Peter A. Hughes has for his said wife Mary Grace and her children aforesaid, as well as the premises considered, . . hath granted, bargained, and sold, and doth by these presents grant, bargain, sell, and deliver unto . . Hayden Coe, in trust for the sole and separate use of the said Mary Grace Hughes, wife of the said Peter A. Hughes, for and during her natural life, and at her death to her children the issue of the present marriage, said children to share equally in the same, the following described real estate," etc., describing it.    The habendum clause in said instrument is in the following language: "To have and to hold . . to the said Hayden Coe, in trust for the said Mary Grace Hughes for life, to her sole and separate use, and to her children issue of the present marriage borned and to be borned, in remainder, to their own proper use, benefit, and behoof forever in fee simple," etc.    It was alleged and

proved, that the plaintiffs, T. H. Hughes and Fanny C. H. Wilson, were the children of Peter A. and Mary Grace Hughes; that their sister Mrs. Emma M. H. Jackson, who was one of the original plaintiffs, died since the suit had been instituted, and H. H. Jackson, the administrator of her estate, was made a party plaintiff; that Mrs. Williams is deceased, she left H. J. Williams as her sole heir at law, and he, before the institution of this suit, conveyed all his interest in the property to the plaintiffs; that Hayden Coe, the trustee, died in 1862; that Peter A. Hughes died in 1893; that Mary Grace Hughes, the life-tenant, died on the 14th day of April, 1896. The petition was filed the 15th day of August, 1896. On the trial the plaintiffs introduced a deed from Paden to Ivy, dated January 1, 1839, and successive conveyances in regular order to Peter A. Hughes prior to the execution of the deed from Hughes to Coe, trustee; and proved Hughes to have been in possession of the property under the title so conveyed. The conveyance to the trustee was duly recorded. There was also introduced in evidence a deed from H. J. Williams to the plaintiffs, bearing date May 18, 1896, recorded June 26, 1896, conveying all the interest and title of Williams in the property, to the plaintiffs.

The defendants, answering the petition, denied the right of plaintiffs to recover, denied their title, and averred that they, and those under whom they claim title, had been in the public, continuous, exclusive, uninterrupted, and peaceable possession of the land sued for, under a claim of right, for more than twenty years. They also introduced deeds made by Peter A. Hughes and Mary Grace Hughes to E. R. Sasseen, bearing dates respectively, July 13, 1863, and July 25, 1863, duly recorded, conveying the property in dispute; also, deeds from Sasseen to Jones, from Jones to Orme, from Orme to Grant, from Grant to Mercer, and from Mercer to Badger, purporting to convey the property in dispute, each for a valuable consideration, duly recorded, and forming successive links in a chain of title from Peter A. Hughes and Mary Grace Hughes to Badger, the lessor of the defendant Allen. It was shown also, in behalf of the defendants, that Badger died December 20, 1890, being represented in this suit by John S. Candler, administra-

tor, one of the defendants; that Badger went into the possession of the property some twenty-seven years before the trial, under the deed from Mercer, and had been continuously in the peaceable possession of the same from the date of his entry, and had made valuable improvements on the land. There was also evidence concerning the delivery of the trust deed; and the defendants insisted that no title ever passed to the grantees, because of the non-delivery of that deed. The evidence pertaining to that issue will be hereafter considered. At the conclusion of the evidence and argument, the court directed a verdict in favor of the plaintiffs for the land sued for, and judgment was rendered accordingly. The defendants moved for a new trial, alleging, in substance, that the verdict was contrary to evidence and to the law, and because no title was shown to be in the plaintiffs, but that the evidence showed title by prescription to have been in defendants, and because the court directed a verdict. The motion for new trial was overruled, and the defendants excepted. These propositions will be considered in their order.

1. It will be seen by reference to the paper title, that both plaintiffs and defendants claim from a common source. When the plaintiffs exhibited a conveyance from Peter A. Hughes to Coe, and proved, as they did, that Hughes was in possession at the time of the execution of the deed, title in the grantees was sufficiently shown to authorize a recovery, in the absence of proof of outstanding title paramount. The original paper title on which defendants relied was the deed from Hughes and his wife to Sasseen, bearing date subsequent to the deed from Hughes to Coe, trustee; and successive conveyances ending in the conveyance to Badger. Therefore, regarding the mere paper title alone, the plaintiffs were entitled to recover. Hughes having parted with his title to the land, under the deed to Coe, trustee, in 1858, the defendants could only have such interest in the land as Hughes and his wife conveyed to Sasseen, their predecessor in title, in 1863. It is not disputed that if the trust deed was legally delivered it vested in Coe, as trustee of Mary Grace Hughes, a life-estate in the property described by the deed. This deed, having been executed prior to the passage

of the married woman's act of 1866, was made at a time when a feme covert could properly be made the beneficiary of a trust. So that, in all events, Mrs. Hughes took a life-estate in the property, under that deed, through the medium of her trustee. The possession of Hughes and his wife after the execution of the deed was entirely consistent with its terms, inasmuch as the purpose, expressed in the trust deed, was to secure to the wife the rents, issues, and profits thereof; and while the legal title was in the trustee, she as the sole beneficiary (for her life) was entitled to the benefits of the property and the personal use of the same. It appears that the trustee died prior to the execution of the deed by Hughes and his wife to Sasseen. So that, at the time of the execution of that deed, for aught that appears in the record, Mrs. Hughes had no trustee, and being the equitable owner and sole beneficiary of the life-interest, it can not be said that nothing passed by her deed to Sasseen. On the contrary, even if such deed did not convey full legal title to her life-estate, it certainly did convey colorable title, which would stand until set aside, if no more. *Kile* v. *Fleming*, 78 *Ga.* 1. The trust created, so far as Mrs. Hughes was concerned, became executed by the act of 1866. Then the legal title to a life-estate vested in Mrs. Hughes, and she had the absolute right to convey it. Even if the deed to Sasseen was executed at a time when she did not have the legal right to convey her life-estate, yet, when she afterwards became invested with such right and permitted the conveyance to stand without any attempt to qualify or set it aside, it must now be held to have been a ratification, and that Sasseen took from Hughes and his wife such title to the property as the grantors had or afterwards became invested with. Hughes had no title. Mrs. Hughes had a life-estate; and although she attempted to convey the fee, the only effect of the conveyance was to vest in Sasseen her life-estate. If we assume that the provisions of the trust deed in question extended to the remaindermen, it can not be held that by this deed of Mrs. Hughes, purporting to convey the fee in the property, the rights of the remaindermen were in any way affected, nor that such conveyance on its execution worked a forfeiture which entitled the remaindermen to enter. *San-*

*ford* v. *Sanford*, 55 *Ga.* 527. It may therefore be taken, that the legal effect of the conveyance from Hughes and his wife to Sasseen in 1863 was to vest in the grantee the life-estate of Mrs. Hughes. No more, no less.

It is, however, contended by the plaintiffs in error, that a proper construction of the deed made by Hughes to Coe, trustee, in 1858, vested in the trustee title in fee to the land conveyed, for the purposes of the trust, and that the trust extended, not only to the life-estate of Mrs. Hughes, but to the estate in remainder as well, and that inasmuch as their immediate grantors entered into possession in 1863, under a claim of right, and continued in the exclusive, peaceable, uninterrupted, and public possession thereof for more than twenty years, they have a title by prescription; and this contention presents the main issue in the case. To support the contention that the title in fee was by the deed of 1858 vested in the trustee, counsel for the plaintiffs in error cited us to the principles ruled by this court in several adjudicated cases. Among them is the case of *Brady* v. *Walters*, 55 *Ga.* 25. By the terms of the deed construed in that case, land was conveyed to "the wife of Martin J. Brady, for her sole and separate use, and for the use of her children born and to be born, to have and to hold the same *for the uses aforesaid.*" A trustee was appointed to carry out this trust; and the court held that the legal title to the land was in the trustee to protect it for use of the wife and for the use of the children then born and to be born. We are also referred, to support this contention, to the case of *Crawley* v. *Richardson*, 78 *Ga.* 213. There, Graves devised all of his property to Ellen J. Crawley, in trust for the separate and sole use of Charles B. Crawley, with a proviso, that if Charles should die before he arrived at twenty-one years, Ellen was to have the use of it for her life, and at her death it was to go as directed. There was a sale of the property during the minority of the cestui que trust; and the court held that this was an executory trust in Ellen J., continuing until Charles B. should attain his majority, and there being a right of action in the trustee to recover the property, prescription ran against the trustee, and as she was barred before the plaintiff became

of age, he was likewise barred and the prescription was complete. Another case, that of *Cushman* v. *Coleman*, 92 *Ga.* 772, is cited as supporting the contention. There, property was conveyed by Grantland to Nisbet, and his heirs, forever in fee simple, in trust for the sole and separate use of . . Sarah C., . . wife of Jerry Cowles, during her natural life, and at her death, in trust to be equally divided between such children of . . said Sarah C. . . and Jerry . . . as may be in life at her death, and the representatives of deceased children; and the court held, that under the terms of this deed the trustee took a full title to the land, and that the title as to the remainder vested in him so long, at least, as the identical persons who were to take and enjoy it were not ascertainable, and that inasmuch as it had been occupied for more than twenty years before suit was instituted by the remaindermen to recover it of persons who entered under a claim of right, whose possession was notorious, peaceable, and continuous, the beneficiaries were barred because the trustee was barred. Still another case, that of *Henderson* v. *Williams*, 97 *Ga.* 709, has been cited to support this contention of plaintiffs in error. There, the trust created was for the sole and separate use of a daughter of the testator for life, and at her death the property was to vest absolutely in fee simple in such child or children as she might have then living; but this will conferred upon the trustee power to sell the trust property, to reinvest the proceeds, to use the corpus of the estate for certain specified purposes; and the court held in that case, "the trust created by the will was for the benefit of those entitled to take in remainder as well as for the life-tenant, although the trustee was not invested with the legal title to the estate in remainder beyond what was involved in the execution of those powers."

The purposes and uses for which the trust property was held in the cases cited were entirely different from those expressed in the deed now under consideration. In that of *Brady*, the trust created was not that of a life-estate to the wife and remainder to the children, but it was for the sole and separate use of the wife *and* the children born and to be born, and such trust was not executed until the possibility of the birth of any

more children had become extinct. In that of *Crawley*, the trust was made expressly to continue until the son became of age. The attempted alienation of the property was during his minority, and there was no question made as to the existence of a trust at the time of the alienation, nor that the legal title was in the trustee for the purpose of the execution of the trust. In the case of *Cushman*, the property was conveyed to the trustee and his heirs forever in fee simple. Not only so, but the grantor, after creating a trust for the benefit of the wife during her life, uses this language: "and at her death, *in trust* to be equally divided between such children of her and her present husband." By the terms of this deed, the trust could not be limited by implication to the life-estate of the wife, because the grantor in express words continued the trust until the division between the children should be made. In the case of *Henderson*, while a portion of the will would seem to limit the trust to the life-estate of the daughter, and provided that at her death the property was to vest absolutely in the children she might leave, its provisions went further, and gave to the named trustees and their successors full power to sell and reinvest or change the investment of any or all of the trust property without an order of the court, and allowed the trustees named, or their successors, upon the application and consent of the cestui que trust, to use any part of the corpus of the estate for its improvement and for the more comfortable support of such cestui que trust. Manifestly, the exercise of the powers given to the trustees in this case required them to possess the right to convey the property in fee, for otherwise the powers could not be executed; and the court in that case expressly declared that though the trustees were not invested with the full legal title to the estate in remainder, they did have power to convey so far as was essential to a due execution of the trust. In the deed under consideration, it was declared by the grantor that the money of his wife had paid for the property which he conveyed; he specified the source from which it came, and declared it was his intention that she should enjoy the property during her natural life, and have the rents, issues, and profits arising therefrom, and at her death the same should go in remainder to their

children which were born and such as might be thereafter born, and that the trust was for the sole and separate use of his wife for and during her natural life, and at her death to her children, the issue of their marriage, who should share equally in the property. The trust was for the said Mary Grace Hughes for life to her sole and separate use, with remainder to her children, issue of their marriage.

In the case of *Bull* v. *Walker*, 71 *Ga.* 195, a trust was created in the following language: "It is my will and desire that at my death all of my property, both real and personal, . . should go into the possession of my daughter Susan P. . . and be for her sole use and benefit for and during her life, . . and at her death to be divided among my grandchildren, the children of the said Susan P. Howard, in such manner . . as she may think most equitable and just, at her death"; and this court held that the named trustee was made trustee of Susan P. alone, and his powers extended only to her life-estate and continued only to her death. In *Rogers* v. *Pace*, 75 *Ga.* 436, where an owner of land conveyed it by deed to P. to enjoy and have the rents and profits during her life, the grantor consenting to be trustee for said P., to have and to hold said land during her life and at her death to her children, this court held that the only trust estate created was for the life-tenant, and her children took a vested remainder. In the case of *Carswell* v. *Lovett*, 80 *Ga.* 36, a testator gave, after the death of his wife, all his estate to the children of his stepson, those born and that might thereafter be born to him in wedlock, and directed that his executors should, in dividing that part of his estate which should be the share of the female children, "hold the same in trust for the sole and separate use of said female child," and that in no event should it be subject to the debts, liabilities, or 'contracts of any husband whom they should marry, "but that said female child shall have the use of said property during their natural lives, and at their death it is my wish that it be divided between her children and their representatives." This court, through our present Chief Justice, held that the appointed trustee was not a trustee for the remaindermen, and that the trust was executed by the death

of the husband in 1867. In *McDonald* v. *McCall*, 91 *Ga.* 304, where a trust was created in the following language: "the share going to my granddaughter to be held by her husband in trust for her sole ·and separate use during her life, and àt her death to be equally divided between her children," this court held it "created a trust which extends to the life-estate in the granddaughter only, and does not embrace the remainder devised to her children." The last case to which we refer is that of *Fleming* v. *Hughes*, 99 *Ga.* 444. There, property was devised and bequeathed to a named person to be held by him in trust for the sole and separate use of a daughter for and during the term of her natural life, with remainder to the child or children of such daughter living at the time of her death, and in default of such child or children, then to the right heirs of the daughter. It was held, that the legal title passed to the trustee as to the life-estate only, and that the estate of the remaindermen, thus created, was a legal and not an equitable estate. In an elaborate and well-considered opinion, the present Chief Justice, speaking for the court, said: "The extent of a trustee's estate is measured by the purposes of the trust, whether the estate is granted or devised to the trustee alone, or to him and his heirs. . . There being no need of a trustee to preserve the contingent interests in this case, . . it follows that the purposes of the trust in this case were, first, to protect the estate of the life-tenant during her minority, and, secondly, from the marital rights of any husband with whom she might intermarry. For these purposes the trust, when created in the year 1865, was good. . . But when those objects ceased by the life-tenant arriving at the age of twenty-one years, after the married woman's act of December 13, 1866, without marrying, the estate of the original trustee, were he then in life, would have become wholly passive and executed, and the life-tenant and contingent beneficiaries would have then held legal estates, just the same as if the testator had originally devised the property to 'Emma DeLaigle during her natural life, with remainder to such child or children as she might leave living at the time of her death,'" etc.

.   We do not deem it necessary for us to cite further authorities.

The last case cited in terms controls the construction to be given to the words of this deed. At the time of its execution, not only could a subsisting trust be declared in favor of a married woman, but it would be more effectual to do so, if the grantor desired to set aside the property for her separate use and free from the contracts or debts of any husband. It was, therefore, not only legal, but proper, if the husband chose that his wife during her life should have the benefit of the property which her money had purchased, to vest the title in a trustee for her sole and separate use during her life; and when, having done so, he further stipulated that at her death it should go in remainder to the children born of their marriage, no necessity existed, in order to accomplish this object, for the services of a trustee; and on the authority of the case of *Fleming* v. *Hughes*, supra, the trust created in 1858 was executed by the act of 1866, and the words creating the trust under consideration bear exactly the same import that they would, if, since the act of 1866, a grantor had conveyed property to his wife for life, with remainder to her children, without the interposition of any named trustee. Such being our construction of this deed, it must be held, that under the trust deed title only vested in the trustee as to the life-estate of Mrs. Hughes, and did not extend to the estate in remainder. This being true, the remaindermen had no right of entry until the death of the life-tenant; and consequently no possession, however long and continuous, open and peaceable, could affect the rights of the remaindermen before the death of the life-tenant, and prescription did not begin to run in favor of the defendants until that event happened; and under the law as we construe it, the verdict was demanded by the evidence against this contention of plaintiffs in error.

2. It is contended, however, that delivery of the trust deed was never made. It appears from the record that the deed was made September 8, 1858, recorded October 29, 1858. On its face it purports to have been delivered. It was held in the case of *Rushin* v. *Shields & Ball*, 11 *Ga.* 640, that the deed being recorded was admissible in evidence without further proof, not only to show that it was signed but that it was also deliv-

50

ered. The record of a deed is itself presumptive proof of its delivery. *Wellborn* v. *Weaver*, 17 *Ga.* 275; *Harvill* v. *Lowe*, 47 *Ga.* 217. See also, 3 Wall. 636; Tiedeman on Real Prop. § 812; *Highfield* v. *Phelps*, 53 *Ga.* 59; *Watson* v. *Myers*, 73 *Ga.* 138; *Ross* v. *Campbell*, 73 *Ga.* 309. We find nothing in the evidence which would authorize a jury to find that the deed was not delivered. It is true that it was found among the papers belonging to the grantor and his wife, the life-tenant. No presumption, inconsistent with delivery, will be raised from this fact. The trustee had long since died. The wife, being the life-tenant, was the proper custodian of this instrument. It was natural that the papers belonging to the husband and the wife should be kept together; at least, when so done, no discredit can be thrown upon a paper in which she had an interest, and no presumption of non-delivery will follow. The question of delivery.was one of fact. With the evidence contained in the record, any other finding than that the deed was delivered could not have been sustained.

<div align="center">

*Judgment affirmed.    All the Justices concurring.*