## GUNBY *v.* ALVERSON *et al.*

1. A deed between N. E. Gardner of the one part, and Charles W. Dill, trustee for Lizzie Ida Gardner and Mary Ellen Gardner, children of N. E. Gardner, of the other part, after reciting that the grantor was "desirous of securing to his said daughters, Lizzie Ida Gardner and Mary Ellen Gardner, and their children by any future husbands, a maintenance, support, and education," granted "unto the said Charles W. Dill, trustee as aforesaid, and to such other trustee or trustees as may hereafter be appointed in the place and stead of the said Charles W. Dill or his successors, trustee for the said Lizzie Ida and Mary Ellen

*or* their children, the following named property [describing the land]. To have and to hold the said named property to the said Charles W. Dill, trustee as aforesaid, with all the rights, members, and appurtenances thereof, together with all the improvements as I may choose hereafter to make thereon, and to such other trustee or trustees as may hereafter be appointed for the said Lizzie Ida Gardner and the said Mary Ellen Gardner, in trust for their sole and separate use, benefit, and behoof for and during their natural lives, and at their death or the death of either of my said daughters to be equally divided share and share alike among their children. But in case that either of my said daughters should depart this life having no child or children, or the issue of a child or children in life at her death, then and in that event the said property to go to and vest in the other daughter, or, in case of her death, her child or children, or issue of a child or children, if there should be any living; but if my other daughter should be dead without child or children, or the issue of a child or children living, then to go to and vest in any other child or children I may have living, share and share alike." Then follow certain clauses wherein the grantor directs a division of the property between the daughters when they shall attain the age of 21 years or either of them shall marry, and makes provision for advancements to his daughters from the income, and for the enlargement of the estate from excess of income over advances, if any. The deed then continues: "I hereby further direct and require that no part or portion of the corpus of the said estate shall ever be sold until the life-estate is ended, for any purpose whatever, unless it shall become less profitable than ordinary investments, or my daughters should desire to change their residence to some other locality, or for some other like good and substantial reason; but if such reason should ever exist, the fund shall be reinvested, and before said sale shall be made I hereby direct that full and satisfactory reason shall be given, and clear and sufficient proof be made to the chancellor granting said order, that such necessity exists and that the proceeds of the sale when made shall be reinvested in like property, or property as substantial in permanent value and as productive in its yield of profits. I herein again direct that said property, at the death of either of my said daughters, shall vest in and become an absolute fee-simple estate in their child or children, or the issue of their child or children; but if either or both of them should die without child or children, or the issue of such child or children living at the time of their death, then said property shall be subject to the limitations and restrictions hereinbefore set forth." *Held,* that the trust thus created was projected beyond the life-estate of the daughters, and embraced the estate in remainder given to the children of the daughters who might survive their parents.

2. The judge of the superior court had jurisdiction at chambers to order a sale of the trust estate, on the petition of the trustee. In an action of ejectment brought by a child of one of the daughters against the successors in title of the purchasers from the trustee, who with their predecessors in title had been in adverse possession of the land for more

than 20 years, it was not erroneous for the court, to whom the case was submitted by consent, to adjudge that the plaintiff was not entitled to recover.

FEBRUARY 24, 1917.

Ejectment. Before Judge Bell. Fulton superior court. November 3, 1915.

Nathaniel E. Gardner, being seized and possessed of certain land, conveyed the same by deed, the material parts of which are: "State of Georgia, Fulton County.

"This indenture, made and entered into this the fourth day of July in the year of our Lord one thousand eight hundred and sixty-six between Nathaniel E. Gardner, of the County and State aforesaid of the one part, and Charles W. Dill of the same place, trustee for Lizzie Ida Gardner and Mary Ellen Gardner, children of the said Nathaniel E. Gardner, all of the same county, of the other part, witnesseth that whereas the said Nathaniel E. Gardner, being free from debt, and being desirous of securing to his said daughters, Lizzie Ida Gardner and Mary Ellen Gardner, and their children by any future husbands, a maintenance, support, and education, and being seized and possessed of the estate hereinafter mentioned, being acquired by purchase:

"Now therefore the said Nathaniel E. Gardner, for and in consideration of the natural love and affection that he has and bears unto his said daughters, Lizzie Ida and Mary Ellen, and for the purpose of providing a support, maintenance, and education for them, and also in consideration of the sum of ten dollars to him, the said Nathaniel E. Gardner, in hand paid at and before the sealing and delivery of these presents, the receipt whereof is hereby acknowledged, hath granted, bargained, sold, and delivered, and doth by these presents grant, bargain, sell, and deliver unto the said Charles W. Dill, trustee as aforesaid, and to such other trustee or trustees as may hereinafter be appointed in the place and stead of the said Charles W. Dill or his successors, trustee for the said Lizzie Ida and Mary Ellen or their children, the following named property, to wit [four described lots in the city of Atlanta, one on Alabama street, one on Hunter street, two on Whitehall street; and a tract of land situated in Fulton county]. To have and to hold the said named property to the said Charles W. Dill, trustee as aforesaid, with all the rights, members, and appurtenances thereof, together with all the improvements as I may

choose hereafter to make thereon, and to such other trustee or trustees as may hereafter be appointed for the said Lizzie Ida Gardner and the said Mary Ellen Gardner, in trust for their sole and separate use, benefit, and behoof for and during their natural lives, and at their death or the death of either of my said daughters to be equally divided share and share alike among their children. But in case that either of my said daughters should depart this life having no child or children, or issue of a child or children in life at her death, then and in that event the said property to go to and vest in the other daughter, or, in case of her death, her child or children, or issue of a child or children, if there should be any living; but if my other daughter should be dead without child or children, or the issue of a child or children living, then to go to and vest in any other child or children I may have living, share, and share alike.

"I hereby further direct that my two daughters shall own said property in common during their minority or until one or the other of them shall marry, but when they shall attain the age of twenty-one, or either the one or the other of them shall marry, I direct that said property shall be equally divided between them by three competent disinterested men who shall be selected by their trustee for that purpose, who shall enter upon and make a fair estimate of said property, not only in relation to its permanent value, but also in relation to its average proceeds and profits, and when so estimated the property shall be described on separate lists by said appraisers and folded carefully and put in a hat, and my daughters shall draw for same, the oldest being entitled to draw, and the estate of my daughters shall thus be made separate.

"And I further direct that Charles W. Dill, trustee as aforesaid, shall advance to my daughters, if necessary, the whole of the income or profits of the property aforesaid; that he shall educate them in good style, and furnish them means and facilities to qualify and sustain them in the best society; and that neither of them shall be accountable to the other for any part of the proceeds of said estate, but they each shall use said proceeds as their circumstances and situation may require until said division shall be made, when their estate shall become individual and separate. But before said estate shall be divided, if there shall be an accumulation of means sufficient to buy a piece of property of any con-

siderable value, then I direct that said proceeds shall be invested in property of substantial value which will afford a fair and reasonable profit with prospects for permanent increase, which property shall be subject to the same division, limitations, and restrictions as the estate hereinbefore and hereinafter set forth.

"I hereby further direct and require that no part or portion of the corpus of the said estate shall ever be sold until the life-estate is ended, for any purpose whatever, unless it shall become less profitable than ordinary investments, or my daughters should desire to change their residence to some other locality, or for some other like good and substantial reason; but if such reason should ever exist, the fund shall be reinvested, and before said sale shall be made I hereby direct that full and satisfactory reason shall be given, and clear and sufficient proof be made to the chancellor granting said order, that such necessity exists and that the proceeds of the sale when made shall be reinvested in like property, or property as substantial in permanent value and as productive in its yield of profits.

"I herein again direct that said property, at the death of either of my said daughters, shall vest in and become an absolute fee-simple estate in their child or children, or the issue of their child or children; but if either or both of them should die without child or children, or the issue of such child or children living at the time of their death, then said property shall be subject to the limitations and restrictions hereinbefore set forth.

"In witness whereof the said Nathaniel E. Gardner hath hereunto set his hand and affixed his seal, the day and year above written."

At the time of the conveyance Lizzie Ida Gardner and Mary Ellen Gardner were minors. Mary Ellen Gardner died on December 26, 1871, when about nine years of age, unmarried and childless. Lizzie Ida Gardner, who was born on March 4, 1857, married Clark Howell on November 4, 1874. Three children were born of that union; two of whom died in infancy, and the other is Eleanor Howell, who married Mr. Gunby. The mother of Mrs. Eleanor Howell Gunby, namely, Lizzie Ida Gardner Howell, died on July 2, 1912. The grantor, Nathaniel E. Gardner, was a widower at the time of the execution of this deed, and contracted a second marriage, the issue of which was one daughter, Mollie Edwards Gardner, who was born in December, 1872. On the pe-

tition of Charles W. Dill as trustee, an order was granted on December 31, 1872, by the judge of the superior court of Fulton county, sitting in chambers, authorizing a sale of a parcel of land embraced in the deed from Gardner to Dill, trustee, described as a lot in the city of Atlanta, on Broad street, 24 feet wide and 90 feet deep, with stated boundaries. This property was brought to sale pursuant to the order of the judge of the superior court, and by successive deeds from the purchasers at that sale their title passed to Charles B. and Virgil M. Alverson. Mrs. Eleanor Howell Gunby, upon the death of her mother, Mrs. Lizzie Ida Howell, instituted an action of ejectment against Charles B. and Virgil M. Alverson and their tenants in possession of this Broad street lot. The case was tried upon an agreed statement of facts, so much of which as may be material, in addition to such as has already been stated, will hereinafter appear. Plaintiff and defendants claim title from Nathaniel E. Gardner. The plaintiff contends that she is the sole remainderman under the deed from Nathaniel Gardner to Dill as trustee, and is entitled to recover the property upon the death of her mother, the life-tenant; and that her estate in remainder was unaffected by any order of court or decree in chancery relied upon by the defendants in aid of their claim of title. The defendants contend, that the plaintiff did not take any estate in remainder under the deed from Gardner to Dill, trustee, and that they have title by prescription against her as an heir of her mother; that if the plaintiff took any estate under the deed, it was as beneficiary under the trust; and that the trustee's title in the parcel in dispute passed to the defendants' predecessors in title by virtue of the sale made pursuant to the order of the judge of the superior court. An estoppel growing out of the litigation concerning the property to which Dill, trustee, and others were parties is also pleaded in bar of recovery. The court ruled adversely to the contentions and motions made by the plaintiff, and rendered a judgment in favor of the defendants. The plaintiff sued out a bill of exceptions complaining of this judgment.

　　*Dorsey, Brewster, Howell & Heyman,* for plaintiff.

　　*George Gordon, Smith, Hammond & Smith, Robert C. & Philip H. Alston, Brandon & Hynds,* and *King & Spalding,* for defendants.

Evans, P. J. (After stating the foregoing facts.)

1. The record in this case presents several questions, but they all hinge on the construction of the deed from Gardner to Dill, trustee. After careful study of its multiform provisions, we have reached the conclusion that the trust therein created is projected over the entire fee. This being the decisive issue, we will proceed to state our reasons for the conclusion which we have reached.

The granting clause, to the "trustee for the said Lizzie Ida and Mary Ellen or their children," and the final paragraph of the tenendum clause, "I herein again direct that said property, at the death of either of my said daughters, shall vest in and become an absolute fee-simple estate in their child or children, or the issue of their child or children; but if either or both of them should die without child or children, or the issue of such child or children living at the time of their death, then said property shall be subject to the limitations and restrictions hereinbefore set forth," reflect the grantor's conception of this contingency: One daughter might die leaving children, and the surviving daughter might die childless, at which time the children of the daughter first to die would be in life. In this contingency the grantor must have intended either that one half of the estate would absolutely vest as a fee in possession in the children of the deceased daughter, or the title to an estate in remainder would vest in the children of the deceased daughter as to such half, burdened with a life-estate in the surviving daughter, which half would be augmented by the other half of the estate on the death of the surviving daughter without issue, with contingent remainder to other children of the grantor upon the prior death of any children of the named daughters of the grantor without issue. We think the latter was the grantor's intent as gathered from the full provisions of the deed. In order to fully protect this scheme, the granting clause to the trustee for the daughters *or* their children must have been used advisedly as projecting the trust over the whole estate. This view is strengthened by the recital in the beginning of this deed, that the grantor was "desirous of securing to his said daughters, Lizzie Ida Gardner and Mary Ellen Gardner, *and* their children by any future husbands, a maintenance, support, and education." The deed contains no suggestion that the grantor intended to split the estate granted to the trustee, so as to confine it to the daughters.

Moreover, the deed contains certain "directions" to the trustee, which must be construed as definitive of the trust estate. One of these directions refers to the sale of the *corpus* of the estate. The grantor directs and requires "that no part or portion of the corpus of the said estate shall ever be sold until the life-estate is ended, for any purpose whatever, unless it shall become less profitable than ordinary investments, or my daughters should desire to change their residence to some other locality, or for some other like good and substantial reason; but if such reason should ever exist, the fund shall be reinvested, and before said sale shall be made I hereby direct that full and satisfactory reason shall be given and clear and sufficient proof be made to the chancellor granting said order, that such necessity exists and that the proceeds of the sale when made shall be reinvested in like property, or property as substantial in permanent value and as productive in its yield of profits." The grantor's reference to a sale of the corpus under the restrictions he imposed must have been intended to refer to the fee of the estate. It is a well-recognized fact that the uncertainty of life gives a life-estate a more or less speculative value. The precaution against an unwise change of investment so pointedly manifested by this grantor is strongly persuasive that he was striving to preserve the fee to his daughters and others beneficially interested in the grant. Except in the stated contingencies, he did not wish the property sold. Though this clause is chiefly restrictive, yet it contains an implied power to the trustee, upon clear proof to the chancellor, and with his official consent, to sell the corpus when the same becomes less profitable than ordinary investments, or his daughters should desire to change their residence to some other locality, or for some other like good and substantial reason. It will be further observed that the grant is to the trustee "in trust for their [the daughters'] sole and separate use, benefit, and behoof for and during their natural lives, and at their death or the death of either of my said daughters to be equally divided share and share alike among their children," etc. The phraseology of the granting and tenendum clauses of this deed does not contain technical words of conveyance *to* the children. Nor does any language in these clauses restrict the trust to the life-tenants, as was the case in the devises under consideration in *Bull* v. *Walker,* 71 *Ga.* 195, *Carswell* v. *Lovett,* 80 *Ga.* 36 (4 S. E. 866), and

*McDonald* v. *McCall,* 91 *Ga.* 304 (18 S. E. 157). However, we do not place our decision on the narrow technicality of the absence of the word "to" in the conveyance to the grantor's grandchildren, as we give effect to the grantor's intention by projecting the trust over their estate. We think, in view of the various contingencies expressed in this deed and the provision for future beneficiaries who may never exist, the implied authority to sell with the approval of the chancellor, the uncertainty of the events which finally determine the last taker of the property, and the provision for a division among the children of the grantor's daughters who survive their mothers, that the deed should be construed as passing the fee to the trustee. We wish to note that we have not overlooked the line of decisions, of which *Fleming* v. *Hughes,* 99 *Ga.* 444 (27 S. E. 791), may be cited as a type, that a conveyance to a trustee in trust for one for life, with remainder to the surviving children of the life-tenant, and, in default of such children, with remainder over to others, passes to the trustee the legal title of the life-estate only. In such cases there were no complications as to indeterminate remaindermen, implied power of sale, and other indicia reflecting the grantor's intention to convey the whole fee to the trustee. We have carefully examined the briefs of the plaintiff in error and the cases cited as relevant precedents, and we prefer to place our construction of this deed rather upon the whole instrument as defining the grantor's meaning than on any technical rule. This deed is sui generis, and is not molded on the form of any instrument in any of the cases to which our attention has been directed; and we decide the questions presented by an interpretation of its own terms as they reveal themselves.

2. The defendants claim title to the land in controversy as having been acquired in this manner: On August 26, 1867, N. E. Gardner filed a bill against Charles W. Dill, trustee of Lizzie Ida Gardner and Mary Ellen Gardner, to cancel the trust deed. A verdict was returned, finding that the deed be considered as operative and valid, and that the trust be executed by paying out of the trust property the costs, the fees of counsel for both parties, and an annuity of $1000 to the grantor; and that if the issues and profits of the trust estate be insufficient to pay these sums, the deficiency should be supplied from the corpus in such manner as the chancellor should direct. This verdict was made the decree of the

court on May 19, 1869. Subsequently judgments were obtained against N. E. Gardner on notes given for the purchase of some of the property included in the trust deed. Verdicts and judgments were also rendered in favor of certain plaintiffs who had been wards of N. E. Gardner, in actions to which Dill, trustee, was a party, and it was therein declared that the fi. fas. issuing on the judgments should first be levied on the property of N. E. Gardner, and, if sufficient property belonging to him could not be found, then on the trust property held by Dill as trustee. Thereafter Dill as trustee filed a petition addressed to the Honorable John L. Hopkins, judge of the superior courts of the Atlanta circuit, reciting the foregoing legal proceedings and the decrees and judgments rendered therein, and alleging that he had made certain payments on them, that some of the fi. fas. were levied on the Whitehall street property, that a sale by the sheriff would sacrifice the property, that one of his cestuis que trust was dead and the other was at school, and that the income was insufficient to pay these several charges against the trust estate; and he prayed for authority to sell the Broad street property. N. E. Gardner was appointed guardian ad litem for his daughters, Lizzie Ida and Mollie E. Gardner, and as such guardian acknowledged service of the petition. On December 31, 1872, Judge Hopkins granted a chambers order empowering the trustee to sell the Broad street property. It was sold under this order and purchased by James W. English and John R. Wallace. The trustee conveyed the land to the purchasers, by deed dated August 13, 1873. These purchasers immediately went into possession of the land, and the defendants are their successors in title. The defendants and their predecessors have been in the actual possession of the land since 1873, a period of thirty-nine years prior to the institution of the present action. In the former division of this opinion we have construed the trust deed as vesting the legal title in the trustee, and the purchaser at his sale acquired either the legal title to the fee or such color of title as would support prescription. Furthermore, the conceded facts are that the defendants and their predecessors in title have been in actual possession of the land for more than twenty years —a period sufficient to give prescription without being aided by color of title. Inasmuch as the legal title was in the trustee, prescription began to run with the possession of English and Wallace,

and had ripened into title before the bringing of this suit. So, whether the deed executed in pursuance of the sale by the trustee under Judge Hopkins's chambers judgment be considered as passing the legal title or only as furnishing color of title on which to base adverse possession, the plaintiff was not entitled to recover. *Cushman* v. *Coleman*, 92 *Ga.* 772 (19 S. E. 46). Other questions made in the record are involved in these rulings, and are controlled thereby.

*Judgment affirmed. All the Justices concur, except Fish, C. J., absent.*