GLOVER *et al. vs.* STAMPS *et al.*

73 209
99 447
73 209
105 97

1. In an action of ejectment, the plaintiffs claimed under a chain of title terminating in a trust deed, which provided that the trustee should hold the property for the sole and separate use of the plaintiffs for and during their natural lives, and after their deaths, to· such children as they might leave, share and share alike, and, in case they died leaving no such children living, then over to certain

v 73-15

designated persons. When the deed was made, the plaintiffs were minors, but before the suit was brought, they had attained their majority. The trustee had died, and no successor had been appointed. The plaintiffs had never been in possession:

*Held*, that the grant of a non-suit was error. The trust as to these life tenants was executed, and they were entitled to possession.

*(a.)* A *cestui que trust*, entitled to the possesion of land, may maintain ejectment against a stranger, who has no title, or even against the trustee who wrongfully withholds possession.

*(b.)* In this state, parties may insist upon equitable rights in courts of law.

*(c.)* A judgment in ejectment need not be necessarily conclusive as to the title to the fee between the parties to the suit, as the jury may find less than the fee in favor of the plaintiff's lessor.

February 7, 1885.

Trusts and Trustees.  Ejectment.  Title.  Judgments. Courts.  Equitable Pleadings.  Before Judge HARRIS. Douglas Superior Court.  January Term, 1885.

Reported in the decision.

THOS. W. LATHAM, for plaintiffs in error.

P. H. BREWSTER, for defendants.

HALL, Justice.

The court granted a non-suit upon the close of the plaintiffs' testimony in this case, because it showed outstanding title to the premises in a person who held the same in trust for them.  The land was conveyed to this trustee (who was shown to have been dead at the commencement of the suit, and in whose place no successor had been appointed) to hold " for the sole and separate use " of plaintiffs " for and during their natural lives, and after their death, to such children as they may have at that time, share and share alike, and in case they die, leaving no such children then living," then over to certain designated persons. When the deed was executed, the plaintiffs were both minors.  They had attained their majority at the institution of

the suit. A perfect chain of title was shown from the state to the creator of this trust. It was conceded that the plaintiffs had never been in possession of the premises. The question is, whether they showed by this title enough to carry the case to the jury and to put the tenant in posses-sion upon proof of his title, to retain such possession.

From aught that appears to the contrary, their right to the possession, as tenants for life, was complete; as to them, the trustee had no further duties to perform than to protect their title until they reached their majority. Code, §§2306, 2313, 2314; *Knorr, adm'r., et al. vs. Raymond et al.* (present term.) In this point of view, it can make no difference whether the ulterior trusts were executory or executed; as to their estate, it was fully executed; they were capable of protecting their rights, without the assist-ance of the trustee, against an intruder, or other mere wrong-doer, and of setting them up, if necessary, against the trustee himself.

As early as 1766, the Court of King's Bench had this question before them, and it was held by Lord Mans field and his associates that it had then "been long looked upon as a settled point, that the formal title of a trustee should not, in an ejectment be set up against the *cestui que trust*, because, from the nature of the two rights, the *cestui que trust* is to have the possession." Arm-strong, *ex dem.* Tinker *et al. vs.* Pierse *et al.* 3 Burrow's R., 1898, 1901. Again, in 1774, the same pre-eminent magis-trate, with the full concurrence of his able colleagues, said: " One objection that has been taken is, that the legal es-tate is in the trustees, and therefore the heir-at-law cannot recover in this ejectment. In answer to that objection, it has been often determined that an estate in trust, merely for the benefit of the *cestui que trust*, shall not be set up against him; anything shall rather be presumed; nor shall a man defend himself by any estate which makes a part of the title of the lessor of the plaintiff." Goodtitle, *ex dem.* Hart, *vs.* Knot, 1 Cowper's R., 46. Afterwards (in

1795) this point was more fully discussed by the same court in Doe, *ex dem.* Bristow, *vs.* Pegge, 1 T. R., 758, note (a), in which Lord Mansfield said "An ejectment is a fictitious remedy to try the title to the possession of lands; it is of infinite consequence that it should be adapted to obtain the ends of justice, and not be entangled in the nets of form. Great difficulties have arisen as to the legal form of passing land, from the modes of conveyancing in England since the statute of uses. Trusts are a mode of conveyance peculiar to this country. In all other countries the person entitled has the right and possession in himself. But in England estates are vested in trustees, on whose death it becomes difficult to find out their representatives, and the owner cannot get a complete title. If it were necessary to take assignments of satisfied terms, terrible inconveniences would ensue from the representatives of the trustees not being to be found;" and after giving a striking instance of hardship on this account, he continues: "So that, where a trust term is a mere matter of form, and the deeds were the muniments of another's estate, it shall not be set up against the real owner. It is therefore settled, that a satisfied trust shall be taken to be a trust for the benefit of the heir-at-law. A trust shall never be set up against him for whom the trust was intended. It is a mere form of conveyance, and it is admitted that, where the term is in trust for the benefit of the lessor of the plaintiff, the defendant shall not set it up in an ejectment, as a bar to his recovery." Ashhurst, J., in his concurring opinion, said: "In such a case as this, a legal bar shall never be set up in ejectment against the justice of the case. The trustees may perform their functions as well after both the parties are in possession." Butler, J., agreed entirely with Lord Mansfield, and asserted that the doctrine laid down had prevailed "for the last forty or fifty years." Some years afterwards, these cases, together with many others, both before and since, were overruled, both by courts of law and courts of equity in England, not because it was denied

that the *cestui que trust* was entitled to the right of posses-
sion, but because it was said that the right was recognized
only in equity, and that at law he was regarded merely as
a tenant at will.

It was assumed, contrary to what we have seen was the
truth, that Lord Mansfield was the originator of the princi-
ple.    Lord Redesdale, in Shannon *vs.* Bradstreet, 1 Sch.
and Lef., 66, boldly asserts that "Lord Mansfield had on
his mind prejudices derived from his familiarity with the
Scotch law, where law and equity are administered
in the same courts, and where the distinction between
them, which subsists with us, is not known, and that
there are many things in his decisions which show that
his mind had received a tinge on that subject not quite
consistent with the constitution of England and Ireland,
in the administration of justice."    When the propensity
of the author of this charge against so illustrious a judge
as Lord Mansfield to indulge in the practices he attributes
to others, is remembered—notably his accusation against
Lord Coke, on the trial of the Banbury Peerage case, that
he was too fond of making the law, instead of declaring the
law, and of telling untruths to support his opinions—it is a
matter of some surprise that an author generally so cau-
tious and accurate as Mr. Lewin should have adopted and set
forth in his Treatise on Trusts, p. 519, Lord Redesdale's ac-
count of the origin of the principle in question.    Sir Har-
ris Nicolas, in his report of the Banbury Peerage case,
says of Lord Redesdale, "those who are best acquainted
with his speeches and opinions will smile at his opinion of
Lord Coke, and may, perhaps, exclaim, ' *Mutato nomine,
de te fabula narratur.*"    Nicolas Ad. Bast., p. 461 and
note (2).

But to return to the subject in hand, it is very evi-
dent that, but for the anxiety to keep distinct the line of
demarkation between courts of law and equity as to the
kind of rights and remedies that each of them adminis-
tered, the decisions above cited would not have been over-

ruled. Recent legislation in England has relaxed, if it has not abolished, these shadowy distinctions. They have not been insisted upon as essential in this state since the passage of the act of 1821, Cobb, 464, allowing parties to insist upon equitable rights in courts of law, " where they conceived that they could establish their claims without resorting to the conscience of the defendant;" and now, when by our Code, §3082, it is at the option of the suitor to institute his suit for an equitable cause of action either in a court of law or equity, their existence in this respect is surely unimportant. That such actions as that under consideration have been sustained in such of our sister states as have no courts of equity, or as have legislative enactments similar to ours, is well established. Tyler on Ejectment, p. 59 *et seq.; Ib*, 64, 65; *Ib.*, 75 and citations. The party having the right to the possession, where it is wrongfully withheld even by the trustee, may, under these decisions, maintain ejectment against him for its recovery, and *a fortiori*, it may be thus recovered from a mere wrong-doer. The bare right to the possession of lands authorizes their recovery by the owner of the right, together with damages for withholding it. Such is the express provision of our Code, §3014. The plaintiff in ejectment may also recover " upon prior possession alone," as it would seem. without other right thereto than is implied from such possession " against one who acquires the possession by mere entry and without any lawful right whatever." Code, §3366 and citations. The distinction between the bare right to possession and possession alone, irrespective of such right, is thus made manifest. In the former case, the action is given against all persons, and may be sustained unless the defendant shows a paramount right either in himself or another. In the latter the recovery may be had against the defendant, unless it is shown that he is not a mere wrong-doer. That a *cestui que tru t* entitled to the possession may maintain ejectment against a stranger who has no title seems to be pretty fully established, even in

the absence of such provisions as those cited from the Code. See Sedgwick & Waite, Trial of Title, §223 and citations. The judgment in ejectment need not be necessarily conclusive as to the title to the fee between the parties to the suit, for the jury may find less than the fee in favor of the plaintiff's lessor. Code, §3362, and this seems to be in accordance with the rulings that prevailed in England prior to our adopting statute. Doe, *ex dem.* Bristow, *vs.* Pegge *ut supra.* There was certainly enough in the evidence to carry the case to the jury and to put the defendant upon proof of his right to maintain his title to the possession. There was error in awarding the non-suit, and the cause must be remanded for another hearing.

Judgment reversed.