BLALOCK *vs.* NEWHILL *et al.*

1. Where an action for land in the statutory form was brought by a trustee for certain named *cestuis que trust* against a defendant in possession, and pending the action both the trustees and the defendant died, the declaration could be amended by striking the name of the deceased trustee and permitting the action to proceed in the names of two of the *cestuis que trust,* who had then attained their majority, and for the others, who were still minors, by a *prochein ami.*

2. The real claimant of the title could be made a party defendant by serving him with a copy of the writ, although both the trustee who brought the action and the original defendant were dead, the *cestuis que trust* being capable of prosecuting the case. The real claimant having thus been made a party, the action could proceed for mesne profits as well as for the land; nor did it matter that the suit was brought in the statutory form instead of in the common law form of ejectment.

3. Where both parties to a suit for land derived title from a common grantor, the elder of the two would take precedence, in the absence of fraud or illegality therein; and where it appeared that the holder of the junior title was put on such inquiry as was equivalent to notice of the senior title, a verdict finding in favor of the latter was demanded by the evidence.

(*a*) Where, on a bill in equity, a decree was rendered against the defendant, fixing the title in the complainant, to whom the defendant was indebted, the fact that the defendant had voluntarily made a deed to his wife while he owed the debt and was insolvent, and that he subsequently conveyed it to the complainant, did not make her conveyance void as being a pledge or sale of her separate property in payment of the debt of her husband.

January 18, 1887.

Parties. Amendment. Trusts and Trustees. Ejectment. Title. Notice. Husband and Wife. Before Judge HARRIS. Fayette Superior Court. March Term, 1886.

To the report contained in the decision, it is necessary to add only the following: Both plaintiffs and defendant claimed under M. M. Tidwell. Plaintiffs, through their guardian, filed a bill, or petition in the nature of a bill, against M. M. Tidwell, as executor of Wm. M. Hill, for an account and settlement. As the pleadings were originally

filed, there were no allegations as to the investment of the trust funds or effort to trace them. Blalock testified that he saw this bill after it was filed in office, and that he thought it was afterwards amended, but he never saw the amendment nor knew what it contained. At the April term, 1874, of Fayette superior court, a compromise was agreed on between Tidwell and the complainants; the pleadings were amended so as to trace the trust fund invested by Tidwell, and a verdict and decree rendered, finding $1,500 against the defendant, to be discharged in part by making title to the complainants or their trustees to the property in dispute and other property. Prior to the rendering of the decree, Tidwell had exchanged a house and lot owned by him for the one in dispute. He was insolvent and heavily in debt, and at his request, the person with whom he exchanged made a deed to his wife. After the decree above stated was rendered, at Tidwell's request, his wife made a deed to the property to Hill, as trustee of his wards. This was dated April 29, 1874.

The defendant claimed under a sheriff's deed, dated April 3, 1877, based on a sale under a *fi. fa.* in favor of G. C. Looney against M. M. Tidwell, dated March 6, 1875. The jury found for the plaintiffs. The defendant moved for a new trial, which was refused, and he excepted.

T. W. LATHAM ; BLALOCK & SPENCE; E. W. HAMMOND; P. H. BREWSTER; W. A. TIGNER, for plaintiff in error.

JOHN D. STEWART; JOHN I. HALL, for defendants.

HALL, Justice.

This was a statutory action for the recovery of real estate and mesne profits, at the instance of John W. Hill, who sued as trustee of Sarah C. Cochran, Margaret S. Cochran, William A. Cochran and Pleasant G. Cochran, minor children of M. A. Cochran, and was brought against E. B. Langston. Pending the action, both the trustee and the

defendant, Langston, died. A motion was made to amend by dropping from the suit the name of the deceased trustee, and an order was taken to proceed in the names of two of the *cestuis que trust*, who had then attained their majority, and the others, who were still minors, by a *prochein ami*. The court allowed the motion over the objection of Jesse L. Blalock, who, it was shown, was the real owner of the premises for the recovery of which Langston had been sued. Blalock was made a party by serving him with a copy of the writ, after the death of the trustee and the original defendant, and to this he likewise objected, but the court, notwithstanding his objection, held that he was properly made a party by this mode of procedure. To these decisions Blalock filed his exceptions *pendente lite*, which were certified and became a part of the record in the case. On the final hearing, a verdict was returned, finding for the plaintiff the premises and mesne profits. Defendant, Blalock, moved for a new trial on various grounds, which was refused, and the case is brought here on exceptions to that judgment, as well as upon those taken *pendente lite*.

1. The *cestuis que trust* of the original plaintiff were the parties really interested in the suit; while he was invested with the naked legal title to the property, he had no beneficial interest in it as against those for whose use he held it, and while, on account of this relation between him and them (as well as their minority), he was a proper, yet he was not an indispensable party to the action. They might have prosecuted the suit in the name of such of them as had attained their majority, and by *prochein ami* as to such of their co-plaintiffs as were still minors, and the outstanding legal title in the trustee being that on which they relied, and which gave them the right to the possession, would not have availed to defeat their recovery, as was expressly held in *Glover et al. vs. Stamps et al.* 73 *Ga.* 209. The law relating to the amendments of pleadings (code, §3487) provides that in an action by or against

an executor, administrator or other representative, the declaration may be amended by striking out the representative character of such plaintiff or defendant.   And in an action by or against an individual, the pleadings may be amended by inserting his representative character.   Particularly in the case of infants, the rule upon this subject is very indulgent, and large privileges in respect to this are secured to them, for it is expressly provided that suits commenced and prosecuted by them alone are not void, and although they are defective in wanting a guardian or next friend, the defect is amendable before verdict and cured by verdict.   Code, §3263.   The scope and design of these acts would evidently embrace the case of an infant plaintiff becoming of age, and authorize the dropping of his trustee's name from the action, or allowing the case to proceed in the name of adult plaintiffs in case the representative had died during its pendency, or of providing a next friend for such as were minors when the representative was dead; and such has been the uniform practice of our courts.   *Childers vs. Adams*, 42 *Ga.* 353; *Sims, ordinary, vs. Renwick*, 25 *Ga.* 56, with numerous other cases cited under §3263 of the code.

2.   There never was a time, after the death of the trustee, when there were not plaintiffs in being who were capable in law of prosecuting this suit, and it is a mistake to suppose that it was not pending because both parties, plaintiff and defendant, were dead when Blalock was made a party by serving him with a copy of the declaration.   It was shown to the court that Langston, the deceased, held the premises, at the commencement of the suit, as Blalock's tenant, and it is not denied that, in an action of ejectment, the true owner may, in all cases, be made a defendant by serving upon him a copy of the pending action, and upon being thus notified, that he is bound by the judgment (code, §3360), but it is insisted that the provision is not applicable to a suit in the statutory form; and while it is conceded that the owner might be bound, either in this form of ac-

tion or in a regular ejectment suit, by a verdict against his tenant as to the title to the possession, yet it is confidently claimed that when the tenant dies pending the case, particularly in this species of action, there can be no recovery against the landlord for mesne profits, unless the representative of the tenant be made a party with him. The very reverse of all these positions is the well-settled law of this State, as has been frequently determined by this court. *Henderson vs. Hackney*, 13 *Ga.* 282; *Gardner vs. Granniss*, 57 *Id.* 539; *Willingham vs. Long et al.*, 47 *Id.* 545. In *Williamson and others, ex'rs, vs. Heyser, ex'r,* 74 *Ga.* 271, we said, upon a review of the previous cases, "If the recovery had been against the tenant alone for the land and mesne profits, while it would have bound the landlord as to the land itself, it would not have bound him as to the mesne profits. The judgment against the tenant alone for the mesne profits could not have been enforced against the landlord or his property, but had the landlord been a party, however he became such, whether by the action of this plaintiff or by his own act, at the commencement of the suit or during its pendency, at any time prior to the trial, then the verdict and judgment would have bound him, not only as to the land, but also for the mesne profits." This, it will be remarked, was ruled in a statutory action for the recovery of real estate and mesne profits.

3. Both parties derived title from a common grantor. The plaintiffs' title was the elder of the two, and in the absence of fraud or illegality in procurement, it took precedence of the defendant's. The decree under which the plaintiffs obtained their title was older than the judgment on which the execution issued, which was levied on and sold the land when Blalock became the purchaser. Apart from the rule *caveat emptor*, which ordinarily obtains at such sales, there is ample evidence in this record to charge Blalock with actual notice of plaintiff's right to the property, and to affect him with bad faith in bringing it to sale in disregard of their rights, for he knew of the pendency

of the suits in which they obtained a decree for the land, and he is chargeable with notice of all the facts that could have resulted from a full investigation of the matter, which, in good conscience, he should have made, having been thus put upon inquiry. The technical defects he discovered in the proceeding at their instance, if they in fact existed, while they might have resulted in an erroneous or irregular decree, were not such as would have rendered it void. Nor did it matter that the title to the land was in the wife of the common grantor of the parties litigant at the time the decree was rendered, and that she subsequently conveyed it to the plaintiffs in execution, and that there was performance of this decree in their favor; it was not a pledge or sale of her separate property in payment of her husband's debts in a legal sense, for she held under a voluntary conveyance from him at a time when he owed this debt and was utterly insolvent, and merely did voluntarily what, in honor and conscience, she should have done, and what she would have been compelled to do had the parties been forced to resort to law for the assertion and enforcement of their rights. As to the superiority of plaintiffs' title over defendant's, see *Scott vs. Singer*, 54 *Ga.* 689; *Wood vs. McGuire's Children*, 17 *Id.* 303, 321; *Miller vs. Surls*, 19 *Id.* 331, 333; *Harrison vs. Hatcher*, 44 *Id.* 639. Without reference to any other question made by this record, we are of opinion that the verdict in this case is not only sustained, but imperatively demanded, by the law and evidence, and even if there was error in some other particulars (and we do not decide that there was), it could have no influence in bringing about a different result on another hearing, and therefore any discussion of the questions raised by them would be fruitless and unnecessary.

Judgment affirmed.