### SANFORD et al. v. TANNER et al.

1. When in an action for land the defendant disclaims both title and right of possession, and a judgment thereupon is rendered against him in favor of the plaintiff, the same does not bind or conclude the true owner or landlord as to his title, when the latter is neither a party to the action, nor had any notice thereof.

2. It is not erroneous to admit in evidence writings, such as a deed and promissory note, which on their face purport to have been executed by a given person, when there is some evidence tending to show their execution by the maker, and other evidence tending to show his ratification of the same, al-

though there may be testimony strongly tending to show that it was physically impossible for such person to have signed such papers on the date they purport on their face to have been executed.

3. When in defense to an equitable petition the defendant by cross-bill sets up demands against the plaintiff, a determination of which involves an investigation and adjudication of all matters of account in dispute between the parties, and prays for relief against the plaintiff, the latter may set up counter demands and likewise pray for relief; and the court, thus having before it the parties, may by proper judgment or decree wind up the litigation between them, and has jurisdiction for this purpose, although the defendant resides in a county other than that in which the original proceeding was filed.

4. When in considering exceptions to an auditor's report the judge passes an order rereferring to the auditor particular questions in a case, his action in so doing is neither an approval nor a disapproval of the given exceptions, but is simply what it purports to be — a rereference of the matters embraced in the order.

5. The various rulings of the trial judge upon the exceptions to the auditor's original and supplemental reports are apparently correct, and in accord with the legal principles above announced; and it does not appear that in passing upon the various exceptions of fact, or in making the auditor's final report the judgment of the court, any substantial or material error was committed.

Argued November 16, 1901. — Decided February 7, 1902.

Exceptions to auditor's report. Before Judge Brinson. Greene superior court. March 14, 1901.

*Samuel H. Sibley*, for plaintiffs in error.
*Abbott, Cox & Abbott* and *James Davison*, contra.

LITTLE, J. In October, 1897, Tanner, Currier & Heath and Boswell filed an equitable petition in the superior court of Greene county, against Sanford, of Floyd county, and Gresham, a constable of Greene county, seeking to enjoin the enforcement of certain distress warrants sued out by Sanford against tenants of Boswell, to set aside a certain judgment in favor of Sanford, and to enjoin Sanford from enforcing such judgment. The petition alleged that in 1893 Sanford instituted an action of ejectment against petitioners to recover certain land in Greene county, which had been conveyed to them by Sanford in 1888. Defendants Tanner, Currier & Heath were not served, and the plaintiff dismissed the suit as to them, and proceeded against Boswell alone. He did not defend, but disclaimed title and right of possession. Notwithstanding the disclaimer, plaintiff proceeded with his case, and under his evidence a verdict was directed in his favor for the premises in dispute, judgment was entered thereon, and a writ of possession directed to issue. It was alleged that this judgment in ejectment was void as

to Tanner, Currier & Heath, because they were neither served, nor informed of the pendency of the suit. A temporary injunction, as prayed for, was granted against Sanford and Gresham. Sanford in his answer denied having executed a valid deed to Tanner, Currier & Heath. He admitted that in 1887 he had promised to give them a security deed to secure the payment of a debt which he owed them, but claimed that, at the date the deed referred to was alleged to have been executed, he was mentally and physically incapable of making a valid conveyance. If it was executed, it was fraudulent and void, because of his mental and physical condition at the time of execution. From 1888 to 1891 he paid Tanner, Currier & Heath various sums, collected as rents from the land, on his debt. In 1892 he went to the land for the purpose of cultivating it, and found Boswell in possession as the tenant of Tanner, Currier & Heath; whereupon he instituted the action of ejectment, for the purpose of asserting his title against petitioners, who had no title. If the deed they hold is valid, it is only as security for a debt, which has been paid off in full by the rents received, and by other payments made by defendant. On the strength of the rights acquired by the verdict and judgment in the ejectment cause, which vested title in him as against petitioners, he sued out the distress warrants. He prayed a judgment for the rents distrained for, and for general relief, and also that the judgment in ejectment be declared binding on plaintiffs, and, if for any reason the judgment was not binding on them so as to settle title, that the deed held by Tanner, Currier & Heath be declared void and canceled, and the debt due them be decreed to have been fully paid off and satisfied. By amendment the plaintiffs averred that the deed in question was executed on the day it bears date, for the full consideration therein expressed, the same being made up of amounts due them by the defendant at that time. After its execution and delivery Sanford desired to repurchase the land, and terms were fixed, upon a compliance with which a reconveyance was to be made. He failed to comply with these terms, and in 1888 rented out the land and removed to Floyd county. They aver their willingness to reconvey the property upon payment of the amount due them by Sanford; that in 1889, after Sanford abandoned the property, they took charge and rented out the land, supposing that Sanford had abandoned all idea of a reconveyance; that petitioners held possession

bona fide from that time, paid the taxes on the property, and were not aware of any adverse claim on Sanford's part until the distress warrants were issued. Their possession was with his consent, unless the ejectment suit expressed his dissent, and this was abandoned as to them. By an amendment Sanford declared that in the transaction of 1887 he was not allowed credit for certain payments he had made. The agreement with petitioners was that he was to execute a security deed only, and if any deed was executed it was in pursuance of that agreement. Concurrently with the deed, petitioners took his note for the amount named as the consideration in the deed, and neither the note nor other evidences of indebtedness have ever been surrendered by petitioners, nor have they ever made him a bond for titles. A final agreement as to terms was made between them and himself in 1889 or 1890, which was not violated by him. He denied having abandoned his right to a reconveyance, or that he had ever delivered possession of the land. He admitted that petitioners paid the taxes, but averred that it was out of the rents received. He prayed that the recovery in ejectment be declared final as against them, and that the injunction be denied.

The case was referred to an auditor to report upon all issues of fact raised by the pleadings, and to take an accounting between the parties. By an amendment filed before the auditor the defendant set up that his deed, if valid, did not entitle plaintiffs to retain the land, as it was merely a security for a debt that had been fully paid. It was also averred that certain collateral notes placed in the hands of plaintiffs by him had been collected; or if they had not been collected, it was solely because of petitioners' negligence. Defendant claimed further that he sustained damages in loss and sacrifice of machinery, by reason of being deprived of possession of his property, and for waste committed by petitioners during their possession. After hearing evidence on the issues involved, the auditor submitted his report, finding that the note was executed at the time it bore date, in settlement of the account due by Sanford to Tanner, Currier & Heath, and that the deed was given to secure that debt. An itemized statement of the accounts is set out, and a finding made in favor of Tanner, Currier & Heath for the balance due them by Sanford, together with interest as specified in the note; and that Tanner, Currier & Heath had no notice of the eject-

ment suit filed against Boswell. By inadvertence no evidence was taken at the hearing as to the items of rents for the various years, and a statement of these was obtained privately by the auditor from Boswell, and used in his calculation of the amount due. A number of exceptions, both of law and fact, were filed to this report, some of which were approved; and the case was rereferred, and the auditor directed to hear evidence and make report upon several issues omitted from his first report. His findings on the various matters of fact, except those involving the items of rents, on which no legal evidence had been taken, were approved, and full directions were given in the order of rereference as to the effect of the findings omitted. Numerous exceptions pendente lite were taken by the defendant, both to the failure of the judge to approve certain exceptions of law and fact, and also to the order rereferring the case and directing the auditor to take additional evidence. At the second hearing before the auditor the petition was amended, setting out the contentions theretofore stated, and claiming that petitioners had full title to the land; but, in the event it should be found that the deed in question was merely a security deed, praying for a decree for any balance due them by Sanford, that Sanford be decreed to discharge this balance, and, in the event of his failure so to do, that the land be sold and petitioners paid the full amount found to be due them out of the proceeds of the sale. This amendment was demurred to as adding a new cause of action, and upon the further ground that, Sanford being a non-resident of Greene county, the superior court of that county was without jurisdiction to grant the relief prayed for; which demurrer was overruled. The auditor filed a second report in accordance with the order of rereference, finding the amount due by Sanford to Tanner, Currier & Heath to be the same as reported in his first report, and against the various contentions of Sanford as to waste, etc. He further reported as a finding that the ejectment judgment was not binding on Tanner, Currier & Heath, because they had no notice of the suit. Numerous exceptions of fact were filed to this report, all of which were overruled, and a decree was entered in favor of petitioners against Sanford for the amount found by the auditor to be due by him to them, and a special lien for this amount was decreed against the land, and execution was ordered issued accordingly. Error is assigned upon the exceptions taken pendente lite,

upon the overruling of defendant's demurrer to the last amendment to the petition, upon the overruling of the exceptions of fact filed to the auditor's second report, and upon the terms of the decree entered in the case.

1. A question of prime importance in this case is, what was the effect of the judgment recovered by Sanford in the action of ejectment? It will be remembered that the petition named Boswell and Tanner, Currier & Heath as parties defendant, and Boswell filed a disclaimer, and by proper order, granted at the instance of the plaintiff, Tanner, Currier & Heath were stricken as parties. The disclaimer filed by Boswell was as to both title and the right of possession, notwithstanding which the case proceeded to judgment against him. Boswell was the tenant of Tanner, Currier & Heath, who, the auditor found, had no notice of the suit. This finding was approved by the trial judge, and there was ample evidence to sustain it. It is claimed that a judgment in ejectment against a tenant, even where the real owner of the land was not a party to, had no notice of, and took no part in the proceedings in such a case, is binding on such real owner; but in our opinion this contention is not sound. In 1 Freeman on Judgments, § 185, the rule is thus stated: "If the landlord did not participate in the defense, and was not notified of the pendency of the previous action, the judgment rendered therein is not admissible against him for any purpose except to show the fact of its recovery, and that the defendant therein had ceased to hold as his tenant." In the case of Read *v.* Allen, 58 Texas, 380, it was ruled that "A judgment against a tenant rendered in a cause to which his landlord is not a party, and of which he had no notice, can not affect the landlord's title." Rulings in the following cases are also to the same effect: Chant *v.* Reynolds, 49 Cal. 213; Striddle *v.* Saroni, 21 Wis. 175; Bradt *v.* Church, 110 N. Y. 537; Oetgen *v.* Ross, 47 Ill. 142; Powers *v.* Schoeltens, 79 Mich. 299. Moreover, in several of the States from the courts of which the above cases are cited there are statutory requirements that the tenant shall notify the landlord of such a suit, when the tenant is served with the same. We do not think that there has been any adjudication of this court in conflict with the principles of law enunciated in the adjudicated cases cited above. In the case of *Rodgers* v. *Bell*, 53 *Ga.* 94, it was ruled that, "When an action of ejectment is brought against one in possession of land, who is in fact a tenant of a third person,

and it appears that the landlord knew of the suit, though he is not made a formal party, and the plaintiff recovers the land, he may turn out not only the tenant, but the landlord who has resumed the possession." In that case, however, it appears from the established facts that the landlord not only had knowledge of the pendency of the suit, but employed counsel and afforded the means of defending the action in his tenant's name.

The case of *Williamson* v. *Heyser*, 74 *Ga.* 271, is cited for the proposition that the landlord is bound by a judgment in ejectment against his tenant. In that case the action was instituted both against Williamson, the tenant, and Lote, the landlord, and each was made a party and served; and it seems that the only real question was whether the landlord was bound for mesne profits while the land was in the possession of his tenant. The case ruled in express terms that the true claimant of the title to land may be made a party defendant by serving him with a copy of the pending action, and, having been so notified, he would be bound by the judgment both for the land and mesne profits. Following this proposition a ruling is made as a corollary to it, that if the recovery were against the tenant alone for the land and mesne profits, while it would have bound the landlord as to the land, it would not have bound him as to mesne profits. But this corollary must not be understood as asserting a distinct principle of law disconnected from the principal proposition previously ruled. It is true that in the body of the opinion Mr. Justice Hall said: " If the recovery had been against Williamson alone for the land and mesne profits, while it would have bound Lote as to the land itself, it would not have bound him as to mesne profits." This is said arguendo, and certainly with reference to the facts of the case. Had the judgment which was rendered in that case been against the tenant alone, for the land and mesne profits, because of the notification the judgment against the tenant would have bound the landlord. It could not under the same rule have bound the landlord as to the mesne profits, because the judgment would have determined which of the two was liable for mesne profits. While the same thing may be said as to the land, yet the rule in ejectment as to land (though not as to mesne profits) is, that where the landlord has notice of the pendency of the suit, and the judgment goes alone against the tenant, the landlord is bound, because he had an opportunity to and

did not assert his title.    This decision can not by any fair reading be held to rule anything to the contrary of the proposition that where the landlord has no notice of the suit he is not bound by a judgment in an action of ejectment against his tenant.

In the case of *Blalock* v. *Newhill*, 78 *Ga.* 245, the only point ruled in this connection was that, in a complaint for land in the statutory form, the real claimant of the title could be made a party defendant by serving him with a copy of the writ, and when so brought into the case it could proceed against him as well for mesne profits as for the land.    It is provided in the Civil Code, § 5001, that "A plaintiff in ejectment may in all cases make the true claimant defendant by serving a copy of the pending action upon him, and the person so notified shall be bound by the judgment." These are the exact words used in the ruling made in the case of *Williamson* v. *Heyser*, supra, and were extracted from the Code of 1882, § 3360, and the principle which they enunciate has been recognized as law in this State for a long period of time.    So far as we have been able to discover, there is no adjudication anywhere that the landlord shall be bound by a judgment rendered in an action of ejectment against a tenant, when he has no notice of the pendency of such action, and no opportunity to assert his title.    The cases cited by plaintiff in error do not sustain the proposition for which he contends, nor is it a sound one under the common law. On the contrary it may be taken as established that if the owner of the land or the real claimant thereto is not served or notified of the pending action, both upon principle and authority he can not be bound by the judgment rendered against his tenant.    So far as I am concerned I do not wish to be held as committed to the doctrine that when one is made party defendant in an action of ejectment and disclaims title and the right of possession, the issue of title, notwithstanding such disclaimer, shall be submitted to the jury, and a verdict on proof of title be rendered against the disclaiming defendant, and a judgment entered thereon against him for the land.    By his disclaimer he is forever estopped, as a matter of record, from asserting title to the land which has not been acquired subsequently to the disclaimer; and while the question of the validity of the judgment in this case is not necessary to be passed upon, I must not be understood as acquiescing in its correctness.

2. The correctness of the proposition ruled in the second head-note is apparent from the statement of it, and needs no elaboration.

3. Plaintiff in error insists also that the trial judge erred in overruling his demurrer to petitioners' amendment, in which judgment was asked for the amount found by the auditor to be due, and that the same be declared to have a special lien on the property, in the event that the deed in question was found to be a security deed. It will be remembered that the theory under which the original petition was filed was that petitioners held an unconditional deed from Sanford, conveying the land to them, carrying with it the right of possession. The auditor found, however, that this deed was given as security for a debt, and that this qualification attached to the title it conveyed. The amendment was made by petitioners for the purpose of enforcing their rights as security-holders. The demurrer averred that this amendment created a new cause of action; and that inasmuch as Sanford was a non-resident of Greene county, the superior court of that county had no jurisdiction to grant the relief prayed for. We are of opinion that the judge committed no error in overruling the demurrer. The deed had been determined to be a security deed, and its status was therefore fixed: hence, the prayer made in the amendment sought relief by the proper and legal method of rendering available a security of this character. Certainly this amendment created no new cause of action. The petition to which it was an addendum was filed on the equity side of the court; it called in question the title of the land; it averred that the plaintiffs had an absolute title, and prayed that a judgment which had been rendered in favor of the defendant, recovering the land against their tenant, be declared void as to them, for fraud and want of notice; and an injunction against its enforcement was asked. It was the defendant who brought into direct issue the fact that the title which plaintiffs held was a qualified one — one given as security, that the debt which it had been given to secure had been paid, and that because of these facts the title of plaintiffs had been divested. Among others, these issues were presented by the petition and answer as amended: Did plaintiffs have absolute title? Was the judgment against Boswell conclusive against plaintiffs' title? Was the title which plaintiffs held that of a security for a debt? If it was by a security deed, was the debt

paid off? It was a right which inured to the plaintiffs, if they had a security deed and the maker had not paid the debt, to have a judgment for the amount of the debt, and a special lien on the land. It is true that the original petition did not have for its object the recovery of a money judgment against Sanford, but proceeded on a different theory. Yet, the subject to be adjudicated under it was the title to the land in question. It was filed in equity, and the amendment presented a question growing directly out of the sub-ject-matter of the suit, and the contentions of the defendant therein; and equity, having taken jurisdiction, will retain it and fully adju-dicate all the rights of the parties to the suit, growing out of the case presented. Civil Code, § 3925.

But, as has been said, it was claimed against the amendment that the superior court of Greene county had no jurisdiction to render a money judgment against Sanford, who was a resident of Floyd county. As an original proposition this would be true; but not only did the pleadings in the case make a question involving the title to land, but the defendant Sanford himself, by the allegations of his answer and amended answer and by the prayers therein contained, distinctly raised this question of title. In the case of *Whittle* v. *Tarver,* 75 *Ga.* 818, it was ruled in effect that if the county in which the original suit was filed had no jurisdiction, yet where the defendant filed in that county a bill of review, there was jurisdiction, and a decree rendered therein bound him. But, for another reason, we must rule that the superior court of Greene county, under the circumstances of this case, had jurisdiction to render a money judgment against Sanford. As we have seen, the original petition sought no such judgment, but the decree therefor grew out of the pleadings. Sanford made no question as to the jurisdiction, but subjected himself thereto by coming in and answering the petition on its merits, and by filing a cross-bill in which he prayed affirmative equitable relief out of which grew the judgment he now says the court had no jurisdic-tion to render. He not only voluntarily waived jurisdiction, but voluntarily submitted himself to the jurisdiction of Greene county. This he could lawfully do, as between himself and Tanner, Currier & Heath. Civil Code, § 5079. He answered to the merits, with-out raising the question of jurisdiction; after he had done so, his non-residence will count for nothing in subsequent proceedings. *Phillips* v. *Thurber & Co.,* 56 *Ga.* 394; *Macon Railroad Co.* v.

*Gibson,* 85 *Ga.* 1, 24. We must therefore overrule the point made that the superior court of Greene county had no jurisdiction to render a money judgment against the plaintiff in error under the pleadings in the case.

4. It is further claimed that the judge erred in rereferring certain exceptions of fact which it was claimed he had in effect approved, and in allowing the auditor to take further evidence thereon. It appears from an examination of the record that the questions rereferred were either those upon which illegal evidence had been admitted, or no evidence at all taken thereon, and such issues of fact as had not been passed on by the auditor. Certain credits had been allowed upon a statement of Boswell made privately to the auditor and not in evidence, which affected the whole question of the account. Other questions the auditor had not considered it necessary to pass upon. His order rereferring the case is, we think, in accord with the provisions of the Civil Code, § 4593, which provides that "For indefiniteness, omissions, errors of calculation, failure to report evidence, errors of law, or such other proper cause, the judge may recommit the report for such further action as may be proper." In the present case we think that a rereference was not only proper but necessary, and the trial judge did not exceed his discretion in the scope of the order of rereference.

5. The auditor found that Sanford had executed both the deed and note. There was sufficient evidence to support this finding, and it was approved by the trial judge. The note itself being established as the basis of calculation as to Sanford's indebtedness, the questions raised as to attorney's fees, interest, etc., are disposed of by its terms; and since it was a liquidation of all former demands, the postal cards, which were evidence tending to show an indebtedness at a prior date, were clearly inadmissible, and properly ruled out. The auditor found that there was no waste, either active or permissive, and the trial judge approved this finding. We think there is sufficient evidence to sustain the same, and the question of waste is therefore eliminated. He further found that the actual rents were reasonable rentals for the place, and all it was worth for rent; this was also approved, and we think the evidence sustains the finding. There is therefore no question as to whether credits should have been allowed for actual rents or reasonable rentals, as it had been decided that both were the same. The auditor found that at

the time Tanner, Currier & Heath took possession of the land San-
ford had abandoned it and no one was in possession, and that they
used no force in securing possession of the same; that, while there
had been agreements as to a settlement between them and Sanford
prior to their taking possession, Sanford had failed to keep his agree-
ments, and that at the time they did enter upon the land there was
no binding agreement for settlement between them. These findings,
being approved by the judge and supported by the evidence, dis-
pose of Sanford's claim for damages in being forced to dispose of
machinery at a loss, and being forced at considerable expense to
carry the same back to Rome; for if such claim could have been
sustained at all, it could only have been allowed on the ground of
their wrongful and forcible entry upon the land. We do not deem
it necessary to discuss the other contentions in this case, as they
are all practically controlled by the questions already adjudicated.
There was no material error committed in the court below which
will require a new trial, and the judgment is

*Affirmed. All the Justices concurring, except Lewis, J., disqual-
ified.*